AMERICAN NAT. INS. CO. v. POOLE. NO. 14.—148 S. W. (2d) 14.

Eastern Section.   October 26, 1940.

Petition for Certiorari denied by Supreme Court, January 11, 1941.

C. G. Milligan, of Chattanooga, for plaintiff in error.

Fletcher R. Morgan and Sam H. Ford, both of Chattanooga, for defendant in error.

McAMIS, J.   T. P. Poole, a police officer of the City of Chattanooga, instituted this action for damages for personal injuries sustained when he was struck by an automobile on Cherry Street in Chattanooga operated by one T. D. Booth, a soliciting agent of the defendant American National Insurance Company.   The negligence of Booth is

conceded and the issue of liability turns upon whether or not Booth was an agent of the defendant and, if so, whether he was engaged upon a mission for it, or whether his statute was that of an independent contractor.

At the conclusion of all the evidence defendant moved the court for a directed verdict upon the ground, first, that under the undisputed evidence Booth, in selling insurance and collecting premiums upon a commission basis for the defendant, operated as an independent contractor—that the doctrine of respondeat superior did not, therefore, apply, and, second, that in any event at the time of the collision he had deviated from his course of duty and was engaged upon the private mission of driving his wife to her place of employment near the point where plaintiff was injured. This motion was overruled and the jury resolved the disputed issues in favor of the plaintiff, rendering a verdict in the sum of $3,250 which was approved by the trial judge and, its motion for a new trial having been overruled, defendant American National Insurance Company has appealed in error to this court.

The pivotal question is that of the status of Poole in relation to the defendant. The controlling principles, devolved from our cases, are clearly expressed in Income Life Insurance Co. v. Mitchell, 168 Tenn., 471, 79 S. W. (2d), 572, where many earlier cases are cited and reviewed in an opinion by Mr. Justice Chambliss and it becomes the duty of the court to apply these principles to the undisputed facts of the instant case. That case also involved the liability of an insurance company for the tortious act of a salesman engaged in selling insurance, delivering policies and collecting premiums upon a commission basis under what is known as the ''debit'' system. Further reference will be made to the holding in that case.

It appears without dispute that, a few weeks prior to the date of plaintiff's injury, Booth signed an agency application and contract with the defendant and was given a territory in North Chattanooga and in the small town of Lupton. He owned an automobile and began operating it in the assigned territory. He was not remunerated for the use of his car and bore the entire expense of its operation. His compensation consisted of a stipulated commission but the contract provided that his commission should be withheld by the Company in event his collections fell below ninety-four percent. By a clause especially relied upon by plaintiff he agreed to comply with the instructions and rules of the Company from time to time issued and agreed that his appointment might be revoked at the pleasure of the Company. On the date in question Booth went to the defendant's office for the purpose of receiving policies for delivery to applicants he had solicited the previous week. A further purpose in going to defendant's office was to attend a ''pep'' meeting which was customarily held there on Monday mornings. His wife remained in the car until he returned from the meeting.

Upon returning, Booth drove the car a short distance and stopped for the purpose of allowing his wife to deliver a roll of films to a studio on the side of the street. When she returned, in order to get around a parked truck, Booth backed the car into and against plaintiff who was standing on the street, causing the injuries for which this suit was instituted.

The evidence is undisputed that Booth was free to employ his own methods of obtaining applications for insurance and determine his mode of travel as well as the hours during which contacts were made with prospects. It is to be inferred, however, that defendant knew that he was using his car for this purpose. It is not shown that he was even furnished a prospect's name by defendant or that he was directed, in any manner, when or how prospects could best be interviewed, though it is shown that at intervals defendant furnished a supervisor to cover the territory with him. No supervisor was present at the time in question and whether, when present, the supervisor undertook to direct the physical movements of Booth does not appear.

The question arises, therefore, whether, under these peculiar circumstances, Booth was an agent or an independent contractor for whose act the defendant would not be liable in damages. With particular reference to representatives of insurance companies engaged in selling and delivering policies and collecting premiums of which they retain a part as their compensation, the authorities are not agreed as to whether the status of such person is that of an agent acting under the control and direction of the company or an independent contractor free to move and act at will and responsible only to the company for the net result of the contractual relationship. Perhaps, it may be said that the weight of authority supports the insistence of defendant in this case. See notes compiled in 107 A. L. R., 419 et seq., and 116 A. L. R., 1389, dealing specifically with the relationship between insurance companies and their solicitors as applied to the liability of the company for the torts of such solicitors. We think it may also be said that the trend of modern authority is against the hypothesis of agency and in favor of that of independent contractor. See Kennedy et al. v. American National Ins. Co., 130 Tex., 155, 107 S. W. (2d) 364, 111 A. L. R. 916, holding the insurance company not liable under the same form contract here involved and overruling without specific comment earlier Texas cases holding to the contrary view; also note 116 A. L. R., supra, and cases cited in Income Life Ins. Co. v. Mitchell, supra.

At all events we think the case of Income Life Insurance Co. v. Mitchell, 168 Tenn., 471, 79 S. W. (2d), 572, 575, controlling upon the question at hand unless distinguishable upon the ground that the right to terminate the services of the agent, present in this case, was not reserved in the contract involved in that case, at least by specific contractual provisions. The determination of that case

turned upon the question of the right to control Mitchell, the solicitor, in the performance of his contract to build an insurance debit by selling industrial insurance, as in this case, in a prescribed territory. Treating this question the court said:

"It [the Company] exercised no supervision and gave no direction as to whom to see or where to be seen, how to be urged or induced; whether Mitchell should walk, as he commonly did, or ride, as he did this fatal day; whether he should solicit whites or blacks, or both; and, with special reference to the conduct of Mitchell 'in the given particular' here pertinent, whether he should enter homes, or remain outside. . . . It is true that he was required to use, and of necessity must use, the forms and blanks of the company, and the contracts he was authorized to make for insurance were so limited, but these were matters relating to what he was to do, not the method of his doing. The plans and drawings furnished a contracting builder of a house furnish an analogy."

All other factors concurring, we are of opinion the mere reservation of the right to discharge does not furnish a sufficient ground of distinction between the Mitchell case and the case at bar. While regarded as a circumstance of much importance (Income Life Ins. Co. v. Mitchell, supra), the reservation of such discretionary power, though coupled with the right to exercise general supervision over the work, was held in Louisville & N. Railroad v. Cheatham, 118 Tenn., 170, 100 S. W., 902 not sufficient of its own force to change the relationship between the parties from that of independent contractor to that of an agent who merely carried out the will of the principal.

Where the relationships and the service to be performed are in their nature personal the right to terminate the relationship should not be given the same consideration as the right to terminate an undertaking of a continuous character such as the construction of a building or highway. In the construction of such projects the right to terminate the contract at will might result in great damage and loss to the contractor and it can hardly be supposed that one occupying that status would submit himself to such a hazard. To terminate an insurance agency would not result in great loss, and the reservation of the right to discharge is not so incompatible with the theory of independent contractor.

With respect to the contractual provisions relied upon by counsel for plaintiff, particularly Booth's agreement to abide by the rules and instructions of the Company, we find nothing to indicate that these provisions were intended to give the Company the right to control the physical movements of the solicitor. It is clear that the Company never undertook to control Booth in these particulars, indicating that the parties themselves construed the contract contrary to the insistence here made. We think these provisions related to the control and disposition of the records and funds belonging to the

Company. The same conclusion appears to have been reached in American National Insurance Co. v. Denke, 128 Tex., 229, 95 S. W. (2d)., 370, 107 A. L. R., 415, where the same agency contract was involved.

" 'A partial reservation or control in certain respects does not transform a contractor into a mere servant. If in fact the contract places the contractor in an independent relation, and he reserves general control over the work as to the manner of doing it and method of its execution, the fact that the employer reserves the right to prescribe what shall be done, but not how it shall be done or who shall do it, does not divest him of the character of a contractor. Wood on Master & Servant, 614.'

" 'The right of supervision and the right of the engineer to see that the work was done according to the plans and specifications already prepared does not affect the question of independent contractor.' Casement v. Brown, 148 U. S. [615], 622, 13 S. Ct., 672, 37 L. Ed., 582.' " Louisville & N. Railroad v. Cheatham, 118 Tenn., 160, page 181, 100 S. W., 902, page 907, cited supra.

We do not think the fact that a supervisor, on occasions, was sent along with Booth to see what the contract was being satisfactorily performed indicates that the Company undertook to control Booth in the performance of the contract.

The burden of proof rested upon plaintiff to establish by proof that Booth was acting as agent of the defendant and engaged upon a mission for it when he was injured. We have concluded, after careful consideration, that plaintiff has failed to carry this burden and are of opinion the court should have directed a verdict in favor of defendant at the conclusion of all the evidence.

It becomes unnecessary to consider the insistence that Booth was engaged upon a private mission when plaintiff was injured further than to say, for the sake of the record, that we find this insistence without merit under the facts appearing. The result is that plaintiff's suit must be dismissed by the judgment of this court.

Portrum and Ailor, JJ., concur.