13 So.2d 865

**LUQUIRE INS. CO. v. McCALLA.**

**6 Div. 68.**

Supreme Court of Alabama.

May 27, 1943.

Rehearing Denied June 24, 1943.

Coleman, Spain, Stewart & Davies, of Birmingham, for appellant.

Pritchett & Giles and Erle Pettus, all of Birmingham, and Alton M. Blanton, of Jasper, for appellee.

**FOSTER, Justice.**

This suit is in damages for the death of Irby McCalla, plaintiff's intestate, against appellant, resulting from a collision of the car driven by McCalla and one driven by Pizer, alleged to have been acting in the line and scope of his authority as agent for appellant.

Count 1 is in simple negligence, and count 2A is for wantonness. Both are in good form. Pizer was first made a party; but he was stricken and at the time of the trial was in the armed service. He gave his deposition for defendant. He was driving his own car.

The first question is whether he was a servant or agent of defendant, or was an independent contractor. Appellant insists that he was an independent contractor, and that for his wrongful acts on this occasion appellant was not responsible. The only theory of responsibility is on the principle of respondeat superior.

We will therefore at this time set out the facts on which it is claimed that the solution to that question must be determined. We will not undertake to weigh the evidence, but refer to facts as to which there is some evidence.

Appellant did what may be termed an industrial insurance business. Its policyholders paid by the week in the main. There was a district headquarters at Anniston, which contained several areas called "debits"; and the field superintendent there had general supervision of Pizer's work. On the occasion of this accident Pizer was debit man in charge of the Pell City debit. This included the area between Pell City and Cropwell, about two miles to the south. The collision occurred on that road while Pizer was traveling toward Pell City from Cropwell: about one-half mile from the latter, at 2:30 P. M. on a dry dusty road. The roadway was about thirty-four feet wide, graveled, and had been scraped that day.

Appellant had on March 18, 1941, made a contract in writing with Pizer. The collision occurred on May 27, 1941. Pizer is therein called the agent of appellant and his duties as such are "to solicit and obtain applications for funeral insurance policies to be issued by the company and to collect from policyholders their weekly premiums of previously issued policies in his assigned 'debit'." He was to report once a week and had no authority to bind the company by contract. He "must at all times work for the company," and "agrees to abide by all the rules of the company that are now in effect and any other rules that the company may wish to make." His compensation was a weekly fixed sum, dependent upon the size of the debit measured by dollars to be collected. In this instance his salary was thirty dollars a week (Record pp. 277, 166) with no commission on new business. But as new business was added the size of his debit increased tending to enlarge his weekly salary. The book of rules for the guidance of agents is in evidence. The duties of the agents are outlined in section 5. The oral evidence was that Pizer had "a set route worked out for that debit" so as to "conserve all the time possible." "He is on this debit five days a week and has certain territory that he covers each day during the week." Cropwell and Pell City "are supposed to be covered according to our route on the same day." He "was free to work his debit any

way he saw fit or wanted to, provided he got his work done." On Saturdays he was supposed to attend sales meetings at Anniston. There was no conveyance stipulated for use in his work, and none was provided by appellant. But appellant knew that he used a car in doing it (Record pp. 278, 162); and would not have hired him for that debit if he had not had an automobile (Record p. 162). No expense of it was paid by appellant. Pizer had the privilege of using such means of transportation as he saw fit.

Plaintiff, over objection of appellant, proved that appellant, as insured, had a policy of liability insurance applicable "to the use, by any person of any automobile in the business of the named insured," and "to the use in such business of any employee of the named insured." The advance premium is based on an application of the rates to the number of persons in classes 1 and 2. Class 1 includes employees whose usual duties include the use of an automobile: class 2 includes all employees not included in class 1. Pizer was at the time of this accident included in class 2 of the indorsement attached (page 251 Record). The attachment was a "nonownership liability indorsement." (Record p. 183.)

The book of rules required all representatives to report all accidents in which they are involved, under a heading of "Automobile Accidents."

Pizer testified: "At the time of the collision I was engaged in and about the covering of my territory. My work day had not ended." "In covering my debit I had a set routine, to call on one man after another and stop at a house * * * I had some prospects along the road. I had not selected them. * * * I was going to take them as I came to them." "I had in the car with me a good deal of those things I have described, supplies, and literature furnished me by" appellant.

Proof was also made over objection of appellant that appellant made report of Pizer as an employee for contributions under unemployment compensation law of Alabama. Code 1940, Tit. 26, § 180 et seq.

It is seriously insisted that those facts are not sufficient to support an allegation that Pizer was acting in the line and scope of his employment as an agent or employee, but was properly classified as an independent contractor under the principles declared in our cases. Aldrich v. Tyler Grocery Co., 206 Ala. 138, 89 So. 289, 17 A.L.R. 617; General Exch. Ins. Corp. v. Findlay, 219 Ala. 193, 121 So. 710; United States C. I. P. & F. Co. v. Fuller, 212 Ala. 177, 102 So. 25; General Refrigeration Sales Co. v. Taylor, 229 Ala. 479, 158 So. 314; Taylor v. General Refrigeration Sales Co., 231 Ala. 469, 165 So. 572; Greenwald v. Russell, 233 Ala. 502, 172 So. 895; Moore-Handley Hdw. Co. v. Williams, 238 Ala. 189, 189 So. 757; Dortch Baking Co. v. Schoel, 239 Ala. 266, 194 So. 807.

The status is not the same as where an employer places in the care of an employee an instrumentality for use in discharging his duties and the employee selects a different and more dangerous sort of instrumentality in the use of which the accident occurs. American Rwy. Express Co. v. Tait, 211 Ala. 348, 100 So. 328; Cook v. Mellown & Co., 212 Ala. 41, 101 So. 662; St. Louis-S. F. Rwy. Co. v. Robbins, 219 Ala. 627(5), 123 So. 12.

But the principal is responsible for the acts of his agent done in the scope of his employment in the accomplishment of objects within the line of his duties though the agent seeks to accomplish the master's business in a way not authorized by the master, unknown to him or even sometimes contrary to his express directions. Lerner Shops v. Riddle, 231 Ala. 270, 164 So. 385. Not there considering the unauthorized use of a dangerous instrumentality, not ordinarily so used.

The case of Vert v. Metropolitan Life Ins. Co., 342 Mo. 629, 117 S.W.2d 252, 116 A.L.R. 1381, and the note beginning on page 1389 are very illuminating on this subject. That case dealt with a contract similar in some respects. But there the agent could go outside his "debit" and solicit insurance on the ordinary life plan like any other salesman of life insurance and be paid a commission as other life insurance agents. He also had a "debit" for industrial insurance, and collected in it, also on a commission. When soliciting for insurance contracts outside his debit, the court observed that his relation was entirely different than when he was performing the regular duties in his debit, which included physical errands which required physical services to accomplish and which the court assumed the company had a right to direct. It held that one may

represent the company as agent or servant while fulfilling one part of his contract and be an independent contractor as to the remainder of the duties under the contract.

And it was said in Hall v. Sera, 112 Conn. 291, 152 A. 148, 150: "The important question, however, is not whether the company had physical control of the movements of the car at the time of the collision, but rather whether it had the right of general control over the driver himself—a question of status." That case has much similarity to this one. The agent had a similar contract: was using his own car, which was said to be reasonably necessary to perform his duties or some of them. It was also said in that case: "In performing this duty he was acting under the company's control, and it is immaterial whether he was driving a car, driving a horse, or walking. * * * From the evidence * * * the jury could not reasonably have found otherwise than that Sera was an employee and agent of the company acting within the scope of his employment, and was not an independent contractor." See Luquire Funeral Homes Ins. Co. v. Turner, 235 Ala. 305, 178 So. 536, 538.

The rule is thus well stated in 5 Amer. Jur. 728, 729: "If an employee with the knowledge and consent of the employer repeatedly uses an automobile, not owned by the employer, in the latter's business, the employer will be held to have impliedly authorized its use and to be liable for negligence in connection therewith * * *. The employer is not liable when the use of the automobile or other vehicle operated by the employee is not expressly or impliedly authorized by the employer, and he exercises no control over its operation." To the same effect is Blashfield Automobile Law, Vol. 2, page 1425; 140 A.L.R. 1150.

Citing that authority and many cases, the Supreme Court of Texas in the case of Kennedy v. American Nat. Ins. Co., 130 Tex. 155, 107 S.W.2d 364, 111 A.L.R. 916, held that the question depends upon whether the use of the automobile was expressly or impliedly authorized by the employer. That case takes up the question by states and shows that to be the correct principle, as held in most of them.

We cite the following cases which deny liability. Reiling v. Missouri Ins. Co., Mo.App., 153 S.W.2d 79; American Nat. Ins. Co. v. Poole, 24 Tenn.App. 596, 148 S.W.2d 14; American Nat. Ins. Co. v. Denke, 128 Tex. 229, 95 S.W.2d 370, 107 A.L.R. 409; Grace v. Louisville & Nashville R. Co., 19 Tenn.App. 382, 89 S.W.2d 354.

The following support liability: Amstutz v. Prudential Ins. Co., 136 Ohio St. 404, 26 N.E.2d 454 (Jury); Chatelain v. Thackery, 98 Utah 525, 100 P.2d 191; Pinnix v. Griffin, 219 N.C. 35, 12 S.E.2d 667 (Jury); Richards v. Metropolitan Life Ins. Co., 19 Cal.2d 236, 120 P.2d 650, 651; Miller v. Metropolitan Life Co., 134 Ohio St. 289, 16 N.E.2d 447 (Jury).

█ We think the best considered view on the facts in the instant case is that it was a question for the jury, and the trial court properly left it to them. Moore-Handley Hdw. Co. v. Williams, 238 Ala. 189(11), 189 So. 757; note 140 A.L.R. 1162 et seq.

Assignments 3 and 7.

These assignments relate to the refusal to give the affirmative charge on the wanton count.

There is evidence that Pizer was traveling north toward Pell City trailing a log truck. The road was straight, and thirty-four to thirty-five feet wide in the traveled part. So that the center line (not marked) was approximately seventeen feet from each side. Pizer testified that he was traveling not over thirty-five miles an hour, and that "the dust this truck was knocking up was a regular cloud of dust. At that time I could barely see the radiator cap. I could not see the McCalla car coming in my direction (from) up the hill: I did not see him until he hit. I was looking ahead." "I could not see the truck: all I could see was the dust it raised."

When the collision occurred, McCalla was traveling south. On his right was a ridge of sand and gravel extending in and along the road six to twelve inches high, about twelve inches wide, about four feet from the outside edge of the roadway, and made by a road machine. This left twelve feet to the center of the road in which space the jury could find McCalla was traveling rapidly down grade on a straight road, meeting and passing the truck on his left. There was a head-on collision with Pizer behind the truck. Immediately after the collision Pizer's car was straight up and down the road as it had been traveling, with his left side twelve feet and four inches from the shoulder, and his right

side sixteen feet and six inches from the shoulder. This makes twenty-nine feet, and the car was about six feet wide making the roadway about thirty-five feet. If his car was only twelve feet and four inches from the left shoulder it was about five feet over the center line of the roadway on his left. McCalla had about twelve feet between the ridge and center line. So that Pizer left for McCalla about seven foot of space for travel inside the gravel ridge.

■ If Pizer was thus traveling at the rate of thirty-five miles an hour about five feet across the center line when he could not see beyond his radiator cap for the dust, it is for the jury to say whether or not the conditions were such as to impress him that it was dangerous to do so, that he was so impressed, and that he recklessly proceeded without heeding such danger.

■ There was evidence of skid marks by McCalla about two feet to the right of the center (Record page 48), but none by Pizer. McCalla's rear wheels could be found to have skidded to the left and across the center line at an angle of about thirty degrees caused by the collision. His right front fender was thirteen feet ten inches from the shoulder: his left rear fender was nine feet from the shoulder. The jury could find that McCalla probably saw that Pizer was dangerously close to his lane of travel, applied his brakes and skidded down the road. Whether this was contributory negligence as a defense to the simple negligence count was for the jury. The jury could also find that Pizer was wantonly reckless after becoming conscious of the danger of some one coming down the road whom he could not see, but who was traveling on the right side of the center line, and in danger of Pizer's car colliding with him, and while Pizer was driving about five feet to the left of the center of the road.

This is readily distinguishable from our case of Law v. Saks, 241 Ala. 37, 1 So.2d 28. And resembles more closely the cases of Daniel v. Motes, 228 Ala. 454, 153 So. 727, and Newton v. Altman, 227 Ala. 465 (7), 468, 150 So. 698.

Assignment No. 24.

■ This relates to an exception to a portion of the oral charge. It undertakes to define an obstruction as used in section 9, Title 36, Code of 1940, requiring a driver of a vehicle to drive upon the right half of the highway, unless it is obstructed or impassable. In substance he observed that an obstruction is an impediment which prevents free passage along the road and renders it difficult for travel. He was referring to the gravel ridge along the road to McCalla's right which we have described. In this same excerpt to which exception was reserved, he further told the jury that if the ridge was so near the western edge (McCalla's right) of the road as to give sufficient room for the passage of an automobile between it and the center line of the road, then it would be the duty of a person (McCalla) in driving down that highway, to drive in that space between it and the center of the road in the exercise of reasonable care.

We can see no prejudice to appellant in this, not to say that this interpretation of the Code section could be improved upon. It in no way conflicts with section 11 of Title 36, Code 1940. The effect of the charge is that McCalla must take reasonable care to drive between the ridge if it was an obstruction and the center line if there was sufficient space to do so. The jury could find that he did so, but that his rear wheels skidded across the center line when the collision occurred. This same duty was upon Pizer, and the jury could find that he did not observe it, and was wantonly reckless in not doing so.

Assignments 4, 5, 13, 14, 15, 16, 17, 18, 20, 21 and 23.

These assignments relate to charges which are all based on the theory that McCalla was negligent, preventing a recovery in simple negligence if and because he was driving partly on the left half of the road in the direction in which he was going, and if he thereby proximately contributed to his death. One of them was the affirmative charge; whereas some of the evidence tended to show that he did not drive on the left of the center of the road, though his rear wheels were across the center after the accident. We have referred to this evidence. Some of the charges are predicated on reasonable satisfaction that he was driving on the left side, and that said conduct proximately contributed to his death. Those charges do not hypothesize an intentional or negligent act in doing so.

The rule is broadly stated that a violation of statutory rules of the road prima facie constitutes simple negligence. Tindell v. Guy, 243 Ala. 535, 10 So.2d 862; Cooper v. Agee, 222 Ala. 334, 132 So. 173;

Newell Contracting Co. v. Berry, 223 Ala. 109, 134 So. 870; Newman v. Lee, 222 Ala. 499, 133 So. 10.

■ The court verbally charged the jury that McCalla should have driven in the space between that ridge, if that was an obstruction, and the center line of the road, if there was sufficient space to do so, and he could do so in the exercise of reasonable care. A failure to drive completely on the right of the center line to be in violation of the statute must be either an intentional act, or a negligent act. The roadway was thirty-four to thirty-five feet wide, with no center line marked for identification. He may have been slightly across on his left of the actual center imaginary line unconsciously, in the exercise of due care, in judging where such line actually was in the road, and in appraising the nature of the ridge on his right. If so, under those charges, his negligence would be conclusively fixed by law. We do not so interpret that provision of the rules of the road. The law is not so exacting in its requirements, in our opinion.

Assignment No. 6.

■ This is predicated on the refusal of an unavoidable accident charge. Our latest cases hold that a refusal of such charge is without reversible error. Kelly v. Hanwick, 228 Ala. 336(9), 153 So. 269; Couch v. Hutcherson, 243 Ala. 47, 8 So.2d 580 (10), 141 A.L.R. 697.

Assignments 9, 11 and 12.

■ They are refused charges based on contributory negligence of McCalla, with direction to find for defendant: some of them are regardless of the wanton count. Moreover, the question of contributory negligence was fully and correctly stated to the jury by the judge in his oral charge.

Assignments 41 to 48.

These assignments relate to the rulings of the court in permitting appellee to introduce in evidence a policy of liability insurance called for by interrogatories to defendant and attached to answers to them. We have heretofore in this opinion referred to that ruling, and the evidence in connection with it.

■ The judge in his oral charge to the jury instructed them that they are to consider "certain documents" attached to the answer on the issue of whether Pizer was acting at the time as an independent contractor or as a servant or agent of appellant and must not consider it in regard to any other issue in the case. This was clearly meant to include the policy to which we have referred. The court was discreet in not emphasizing it as a policy of liability insurance.

The instant case was tried before the same judge who tried that of Moore-Handley Hardware Company v. Williams, supra, where the same question was before the court. The situation in both cases is quite similar in this respect, both as to the court's instructions to the jury as to the legality and pertinency of the evidence and nature of the policy. In that case, this Court considered the question quite fully and held that there was no error, citing many cases which take the same view, noting also some taking an opposite view, to which may be added Reiling v. Missouri Ins. Co., Mo.App., 153 S.W.2d 79, cited by appellant; also taking a view consistent with that of this Court on that point is Muraszki v. Clifford, Inc., 129 Conn. 123, 26 A.2d 578, 579, also cited by appellant on other questions. We find no error in connection with that status.

We have considered the other assignments of error which we have not discussed, but which were argued and insisted on by appellant. We do not find in them any reversible error, but they do not involve any legal question which seems to need discussion.

Finding no reversible error, the judgment is affirmed.

Affirmed.

GARDNER, C. J., and BOULDIN and LAWSON, JJ., concur.