35 So.2d 490

**SMITH v. BROWN–SERVICE INS. CO. et al.**

**6 Div. 619.**

Supreme Court of Alabama.

May 20, 1948.

Hal W. Howard and Frank L. Parsons, both of Birmingham, for appellant.

614

Lange, Simpson, Robinson & Somerville, of Birmingham, for appellees.

LAWSON, Justice.

This is a suit by Bill Ervin Smith, a minor, who sues by his next friend, Lee Smith, against Brown-Service Insurance Company, a corporation, and Liberty National Life Insurance Company, a corporation, to recover damages for personal injuries sustained by the said minor when he was struck by an automobile driven by Eugene H. Skipper.

At the conclusion of the plaintiff's evidence, the trial court gave the affirmative charge for the defendants. The correctness of this action of the court is the only question presented on this appeal.

Plaintiff sought to hold defendants liable upon the doctrine of respondeat superior. The relation of employer and employee between the defendants and Skipper, the driver of the automobile which injured plaintiff, was established; that is, Skipper was at the time of the accident a salaried agent of defendants. Luquire Ins. Co. v. McCalla, 244 Ala. 479, 13 So.2d 865.

But such status or relationship in and of itself was not sufficient to make the defendants liable for any negligence of Skipper. To recover against the defendants upon the theory of respondeat superior it was incumbent upon plaintiff to show that the act done was within the scope of Skipper's employment and was committed in the accomplishment of objects within the line of his duties, or in or about the business or duties assigned to him by his employers. Perfection Mattress & Spring Co. v. Windham, 236 Ala. 239, 182 So. 6; Wells v. Henderson Land & Lumber Co., 200 Ala. 262, 76 So. 28, L.R.A.1918A, 115; Palos Coal & Coke Co. v. Benson, 145 Ala. 664, 39 So. 727.

To prove that he was acting in the line and scope of his authority, Skipper was called to testify as a witness for the plaintiff. His testimony is all there is in·the record on that subject.

Skipper was employed by the Brown-Service Insurance Company as an agent on November 23, 1943. Since his employment and since the date of the accident Brown-Service Insurance Company and Liberty National Insurance Company have merged. This merger appears to be the reason why both companies are made defendants to this suit.

His duties were to solicit new insurance, collect premiums due on insurance already in force, and make reports to the company concerning the business which he had done and, of course, to account for the money collected. He had a "rural debit" and a "town debit." A "debit" as here used seems to refer to a territory or area. In other words, a part of the territory in which he was authorized to represent his company was in town while the other part was rural. He was supposed to work his rural territory on Monday and Tuesday of each week and, apparently, to work his urban territory or area on Wednesday or Thursday. However, in some weeks he did not go on his rural debit due to an effort to conserve gasoline, the war being in progress. On Friday of each week he made his reports and turned in the money he had collected to the Homewood office of Brown-Service Insurance Company, located at 2842 South 18th Street in Homewood. He had no other duties to perform on Friday and when such duties were completed his work for the week was ended.

A car was needed in connection with his duties on his "rural debit." The company did not furnish Skipper a car, but allowed him five dollars a week for the use of his personal car while working this rural territory. Skipper owned the car before he began to work for Brown-Service. Although such allowance was more than sufficient to cover the cost of gasoline used in working the rural territory the evidence does not support an inference for the jury to have found that said allowance was to reimburse Skipper for expenses incurred in the operation of his car for any purpose

other than its use in working his rural debit. Skipper testified that the five dollars allowance was for the use of the car, its upkeep, repairs, gasoline and oil—"Whatever it took, to keep the car available" for him to use "on the rural debit." He also testified that the five dollars allowance "was not based on the proposition of you [him] using the car on the in-town debit."

Skipper used his car each day in going to the office of the company and returning therefrom to his home. This was not done under the direction of the company officials nor is there any evidence which would justify an inference that the officials knew that he came to the office in his car. No garage or other facility for the storage of his car was furnished by the company. A public transportation system served Homewood, was available to Skipper, and was used by many of the employees of the company.

This accident occurred at approximately 7:20 a.m. on Friday morning, January 14, 1944. Skipper was driving his own car and was on a direct route from his home to the Homewood branch office of Brown-Service Insurance Company, where he was expected to report between 7:30 and 8:00. The location of the accident was six or eight blocks from the office. At the time of the accident Skipper had on his person applications for insurance which he had taken the previous day and approximately $100 which he had collected during the week and which he was to turn in to the company. He had also his partially completed report of the week's activity which he had worked on the previous evening and which it was his duty to turn in to the company on the morning of the accident, Friday. He had had a telephone conversation with the superintendent about the manner of making out the report on the previous evening. Between the time he left his home and the time of the accident he had transacted no business for the company and the place where the accident occurred was not in the area or territory assigned to Skipper.

It is appellant's insistence that under the facts as above summarized the question of whether or not Skipper was acting within the line and scope of his employment by the defendants was for the jury and that, therefore, the court erred in giving the general charge for the defendants.

Each case involving the question whether the driver of an automobile was acting within the scope of his express or implied authority as an employee at the time of an accident, so as to render the employer liable for damages resulting from the driver's negligence, must be determined upon its own peculiar facts.

◼ The criterion by which to fix liability on the employer is not the ownership vel non of the automobile driven by the employee, but whether or not at the time of the accident the employee was acting within the line and scope of his employment and was committing the accomplishment of objects within the line of his duties, or in or about the business or duties assigned to him by his employer. If the employee was so acting at the time of the accident, the employer could be held liable although the automobile belonged to the employee. Luquire Ins. Co. v. McCalla, supra.

◼ The general rule is that an employee using an automobile, whether belonging to his master or to himself, in going to and from his place of work, is not at such times regarded as engaged in work for his master but is acting solely for his own purposes. Hill v. Decatur Ice & Coal Co., 219 Ala. 380, 122 So. 338; Bourus v. Hagen et al., 192 Wash. 588, 74 P.2d 205; Brown v. Bond, 190 Miss. 774, 1 So.2d 794; Nagy v. Kangesser, 32 Ohio App. 527, 168 N.E. 517; Antilley v. Jennings et al., Tex.Civ.App., 183 S.W.2d 982; Halsey v. Metz, Mo.App. 1936, 93 S.W.2d 41; Smith v. Fine, 351 Mo. 1179, 175 S.W.2d 761; 5 Blashfield's Cyclopedia of Automobile Law and Practice, Perm.Ed., § 3041, p. 196.

The accident with which we are here concerned unquestionably occurred while the agent, Skipper, was on the way from his home to the office of his employer. The only duties which he was to perform on the day of the accident were to have occurred in the office. The accident did not occur within the "debit" (area) where Skipper was authorized to represent his employer in the sale of insurance or in the collection of premiums. Skipper had not been in his territory on the day the accident oc-

curred. He was not enroute to such territory. The accident occurred prior to the time Skipper was required to report to the office and at a time when the employer had no right to exercise control over Skipper.

The cases of Luquire Funeral Homes Ins. Co. v. Turner, 235 Ala. 305, 178 So. 536, and Luquire Ins. Co. v. McCalla, 244 Ala. 479, 13 So.2d 865, are not controlling here. In neither of these cases was the so-called "going and coming rule" held applicable to the facts considered. In Luquire Funeral Homes Ins. Co. v. Turner, supra, the accident occurred while a car, owned by the insurance company, was being driven by one of its field managers, Parker, from his home to the Norwood funeral home of the company. But the said manager was enroute to pick up the defendant's president, whom he was to drive to Montgomery to attend a convention. Parker's duties on the day the accident occurred were not to be performed at the funeral home. His duties required him to go about the state and visit the field agents and branch offices and supervise their work, and it was held that he was engaged in the duties of his employment and in the line and scope of such as soon as he started on a journey in their performance. It is clear that the facts of that case are distinguishable from those in the case at bar. In Luquire Ins. Co. v. McCalla, supra, the accident occurred while Pizer, the insurance company's agent, was engaged in covering his territory, that is, he was at the time of the accident performing his duties within the territory or "debit" assigned to him. The "going and coming rule" could have no application under these conditions.

Appellant contends that the holding in the case of Blair v. Greene, 247 Ala. 104, 22 So.2d 834, is applicable here. We cannot agree with this contention. True, Blair's employee was killed while riding in a motor vehicle while on the way to his home from the place where he worked. But the motor vehicle was furnished by Blair to another employee, a quasi superintendent, who made a practice of carrying the deceased and other employees from the job to their respective homes. The majority of the court held that it was for the jury to determine whether or not the driver of the vehicle was acting within the line and scope of his authority at the time of the accident, in view of the conflicting nature of the testimony, some of which tended to show that Blair, the employer, knew that the motor vehicle was used for the purpose of transporting his employees to and from their homes, and that such transportation was in the interest of and beneficial to the employer.

Such is not the instant case. As before indicated, there is no evidence in this case which would create a reasonable inference that the contract of employment required the company to furnish Skipper with transportation to the office or that the master contemplated that a portion of the $5.00 allowance made to Skipper for the use of his automobile was for that purpose in order to facilitate the labors of Skipper in furtherance of the insurance company's interests so that the jury might infer that such use was contemplated as being part of the compensation for employment, and thereby done within the scope of employment. Skipper's testimony (the only evidence in the record on the question) clearly shows that the $5.00 allowed him each week was solely for the purpose of defraying his expenses incurred in using a car while working his "rural debit." True, the employer knew Skipper had an automobile but, as before pointed out, there is nothing in this record to indicate that the employer expected him to use it as a means of transportation to the office. In this connection the record shows the following question propounded to Skipper on cross-examination and his answer thereto: "Q. Did the company ever tell you to come to work in an automobile, or did they care whether you walked, or rode a bicycle, or came on the street car, or anything of that kind? A. They didn't care, so we got there."

Appellant next insists in effect that the "going and coming rule" has no application in this case because, although the accident happened while Skipper was on the way to his place of employment from his home at the time the accident occurred, he had in his possession money which he was to deliver to the company, as well as records, reports, etc., which he was to file upon

reaching the office. We cannot agree with this position. From the evidence before us, it appears that Skipper had not resumed that portion of his labors whereby he would have been in the service of the defendant. He was still moving within the orbit of his own personal freedom, serving himself by traveling the mode and route of his choice and in a manner to suit his own convenience. The mere possession of money collected by him on previous days and of the reports, etc., was an incident remote from the performance of the tasks which would later have made his acts a part of his duty to the company. The possession of the money, as well as the reports and the like, was incidental only to the main purpose of reaching the office of the company in order to begin the work of the day. As before indicated, at the time the accident occurred the employer had no right of supervision over Skipper.

This conclusion finds support in the case of Nagy v. Kangesser, 32 Ohio App. 527, 168 N.E. 517, 518. In that case the employee was enroute to the place of business of his employer, driving his own automobile, when the accident occurred. He had in his possession some business slips and money which he had collected for his employer under the terms of his employment. The person injured by the automobile which the employee was driving contended that the employer was liable in that the employee was performing a duty for the employer because he had in his possession at the time of the accident the slips and the money which, under the terms of the contract, were to be returned to and deposited with the employer when the employee reached the employer's office. In answering this contention the Ohio court said:

" * * * What shatters this proposition, in our judgment, is the fact that the accident happened prior to 8 a. m. [the time when the employee was to arrive at the office of the employer], and while the employee was on his way to work. To hold the master liable because the money and slips were in the possession of the employee just prior to 8 a. m. exemplifies the doctrine of reductio ad absurdum, for the reason that under like logic the master would be liable at the preceding midnight for any injury occasioned by the employee. Numerous illustrations of this character might be made, showing how futile and illogical the status of such a claim. That the employee, at the time of the accident, had the automobile with him, does not strengthen the claim of plaintiff in error, because the distinct purpose in the use of the automobile at the time of the accident was to carry Berg, the employee, to his place of work, where he was to report at 8 a. m., and after reporting, he with his automobile, was to resume his duties at 9 a. m., one hour afterwards.

"To hold the master liable because of the automobile and the possession of the money and slips, prior to 8 a. m., would not be based on merit or logic, because such a deduction and conclusion would hold the master liable under any other similar circumstances for any injurious act of the employee at any time between 5 p. m. and 8 a. m. of the succeeding day. Thus, it is obvious that to hold the master liable in the instant case would create a precedent which would result in extending the doctrine of respondeat superior to such an extreme that the courts would be compelled to take refuge in the sound principle of public policy in order to protect the principles governing the doctrine of master and servant or employer and employee."

The case of Richards v. Metropolitan Life Ins. Co., 19 Cal.2d 236, 120 P.2d 650, 653, is distinguishable from the case at bar although it is in many respects strikingly similar to this case. The accident occurred while the insurance company's employee was enroute to the office of the company with money on his person which he was to turn in to the company. He was driving his own automobile. The California court recognized the " 'going and coming' rule" but held it inapplicable in that case because there was no evidence to show that his duties for the day did not begin until he reached the office or place of business of his employer, but stated that there was positive evidence to the contrary. The employee's duties on the day the accident occurred were twofold, one part to be performed in the office of the company and the other outside the office

and in the territory allocated to him by the company, in which territory the accident occurred. That court held that such fact distinguished the case from the authorities dealing with situations where the employee was on his way to a restricted, definite, exclusive, business office or place of employment.

It is clear that on the day on which this accident occurred the only duties required of Skipper were to be performed in the office of his employer and it also should be noted that the accident did not occur within the "debit" (area) assigned to Skipper or at a time when the employer had a right to control or supervise Skipper's actions. McCarthy v. Souther, 83 N.H. 29, 137 A. 445; Morris v. Ward, 345 Pa. 226, 26 A.2d 926.

We think the case of Cooke et al. v. Drigant et al., 289 N.Y. 313, 45 N.E.2d 815, is similar to the case of Richards v. Metropolitan Life Ins. Co., supra, but is not applicable to the facts in the instant case.

We have given careful consideration to the cases from other jurisdictions cited by counsel for appellant, but we think the facts in those cases are clearly distinguishable from those in the case at bar and, therefore, the rules announced therein are not here applicable.

Under the undisputed facts and circumstances of this case, we are forced to the conclusion that at the time of the accident here involved Skipper was not engaged in the accomplishment of objects within the line of his duties or in or about the business or duties assigned to him by his employer, but was at such time driving his own car on a mission of his own. Such being the nature of the testimony, we think the trial court's action in giving the general affirmative charge for the defendants was correct. Hill v. Decatur Ice & Coal Co., 219 Ala. 380, 122 So. 338; Gittelman v. Hoover Co., 337 Pa. 242, 10 A.2d 411.

The judgment of the trial court is affirmed.

Affirmed.

GARDNER, C. J., and FOSTER and STAKELY, JJ., concur.