Mary C. Pacheco-Rivera (Mary Pacheco) individually and as executrix of the estate of Enrique Pacheco-Rivera; and Samuel Donald Pacheco-Wilson (Donnie Pacheco), a minor child, by and through his mother and next friend, Mary Pacheco, filed suit in the Circuit Court of Jefferson County against Consolidated Freightways and Delza M. Smith, alleging that Consolidated Freightways and Smith, the driver of its truck, negligently and wantonly caused a vehicular accident in which Enrique Pacheco-Rivera (Enrique Pacheco) was killed and Mary and Donnie Pacheco were injured. The trial court's orders with regard to the wanton counts are not involved in this appeal.
The case was tried before a jury, which returned a verdict in favor of the plaintiffs and made the following awards: Mary Pacheco as executrix of the estate of Enrique Pacheco — $525,000; Mary Pacheco individually — $250,000; and Donnie Pacheco — $100,000. Consolidated Freightways and Smith filed a motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial. The trial court denied the JNOV and denied the motion for a new trial, on the condition that Mary Pacheco individually agreed to remit all damages in excess of $100,000 on her claim, and that Donnie, by and through his mother, Mary, agreed to remit all but $15,000 of the damages awarded to him. Consolidated Freightways and Smith then filed a notice of appeal. Mary and Donnie filed cross-appeals, asking that the original jury verdict be reinstated for each of them.
 FACTS
Enrique Pacheco, husband of Mary Pacheco, was killed, and Mary and Donnie *Page 348 
Pacheco were injured as a result of a vehicular accident that occurred on July 21, 1984, on Highway 31 at the Warrior River Bridge in Jefferson County. At the time of the accident, Enrique Pacheco was driving a Dodge Trans Van and was traveling north on Highway 31. Smith, an employee of Consolidated Freightways, was also traveling north on Highway 31, driving a tractor-trailer unit consisting of one tractor and double trailers owned by Consolidated Freightways. At the site of the accident, Highway 31 had four lanes. The two northbound lanes crossed the Warrior River on a bridge separate from the two southbound lanes. Smith was carrying a load of freight to Nashville, Tennessee, and the Pachecos were en route to their home in Illinois.
The accident occurred as the Consolidated Freightways truck attempted to pass the Pacheco vehicle while both vehicles were on the bridge. The evidence showed that at the time of the initial impact, the Consolidated Freightways truck was traveling between 55 and 60 m.p.h. and the Pacheco vehicle was traveling between 45 and 50 m.p.h. The initial impact was between the left rear guard panel of the van and the right front tire of the Consolidated Freightways tractor. Neither Smith nor Mary Pacheco saw the initial impact as it occurred. Mary Pacheco first realized that there was going to be an accident when she felt a light bump to the left rear of the van.
The evidence concerning the point in the road where the impact occurred is disputed. Smith testified at trial that when he drove upon the bridge, his tractor-trailer unit was as close as possible to the left guardrail without hitting it. He also testified that when the initial impact occurred he was still against the left guardrail, and that he had applied his brakes before impact when he saw the Pacheco vehicle moving toward him. Mary Pacheco testified that when she felt the bump to the rear of the van, she looked in front of her and saw that the van was properly in the far right lane. A Jefferson County sheriff's deputy who investigated the accident testified that all of the debris from the accident was located in the right lane. He found no debris in the left lane and no evidence that the impact occurred in the left lane.
As a result of the accident, Enrique Pacheco was killed and Mary Pacheco and her son, Donnie, were injured, and were transported by ambulance to Carraway Methodist Medical Center. Mary Pacheco lost consciousness during the accident as a result of an injury to her head. She also suffered numerous cuts and bruises to her face and an injury to her left ankle. She was hospitalized for six days. Mary Pacheco's hospital bill was $2,666.40 and the bill from her doctor was $300.00. Donnie Pacheco received multiple abrasions and bruises on the left side of his head, right trunk, and chest. He was hospitalized because the doctors feared that he had received a closed head trauma. He remained in the hospital for four days. The hospital bill incurred by Mary Pacheco as a result of Donnie's hospitalization was $939.75, and his doctor's bill was $230.00. In addition, Mary Pacheco missed two and one-half months from work because of her injuries.
The issue presented by the defendants' appeal is whether the trial court erred when it failed to charge the jury that a violation of a certain "Rule of the Road"[1] was negligence or contributory negligence per se. The issue presented on the cross-appeal is whether the trial court's orders of remittitur, as a condition of its denial of the defendants' motion for a new trial, were erroneous.
 I
At the close of the evidence, the trial court charged the jury with respect to certain Rules of the Road, as follows:
 "[T]he Rules of the Road do consist of a number of statutes that have been enacted into law by your legislature regulating the flow of traffic upon the highways of this state. The violation of certain of these Rules of the Road by persons or by companies using the public highways is prima facie negligence. *Page 349 
This means that the violation of such a rule is presumed to be negligence, but such violation is not under all circumstances negligence. And it is a jury question whether such is a violation and a particular case is negligence.
 "Should you determine that the violation of such a statute is negligence, such negligence, in order to be actionable on the part of the plaintiff or a defense on the part of the defendants, must proximately cause or proximately contribute to the injuries or to the death complained of by the plaintiffs. Now, I'm going to read to you certain of these statutes, and the fact that I read these statutes is no indication that any of these statutes have been violated or that such violation is negligence or that any such violation proximately caused or proximately contributed to the injury or to the death complained of by the plaintiffs.
 "It is for you to decide whether or not the statutes are applicable, whether or not they have been violated, and whether or not such violation is negligence and whether or not any such violation proximately caused or proximately contributed to the injuries or to the death complained of by the plaintiffs, depending upon what you find the facts to be in this particular case or these particular cases."
This instruction substantially follows Alabama Pattern JuryInstructions: Civil, 26.12 (1974).[2]
The court charged the jury regarding four Alabama Rules of the Road. The only Rule of the Road given by the trial court that was applicable to the wrongful death claim, and the only rule under consideration in this appeal, was Ala. Code 1975, § 32-5A-88(1), which provides, in part: "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." (Emphasis added.)
In the references following A.P.J.I. 26.12, several cases are cited in which the violation of a Rule of the Road was held to constitute only prima facie evidence of negligence. Included in these cases is Luquire Insurance Co. v. McCalla, 244 Ala. 479,13 So.2d 865 (1943). That case dealt with Alabama Code 1940 (Recomp. 1958), Tit. 36, § 9 (driving on the right side of the highway), which set out a similar but more defined rule than is set out in § 32-5A-88(1). This Court in McCalla affirmed the trial court's refusal to charge that the violation of this particular Rule of the Road was negligence as a matter of law.
In McCalla, suit was filed because of a head-on collision between the plaintiff, McCalla, and Pizer, an employee of the defendant, Luquire Insurance Company. As in this case, there was a dispute regarding which vehicle was over the center line of the roadway. The defendant contended that the plaintiff had crossed the center line in violation of a Rule of the Road and that this constituted contributory negligence as a matter of law. In affirming the trial court's refusal to give the requested charge, this Court held that "a violation of statutory rules of the road prima facie constitutes simple negligence." 244 Ala. at 484, 13 So.2d at 869. A portion of this Court's rationale in so holding was that the plaintiff "may have been slightly across on his left of the actual center imaginary line unconsciously, in the exercise of due care, in judging where such line actually was in the road," and if so, the giving of the defendant's charge would have meant plaintiff's "negligence [was] conclusively *Page 350 
fixed by law." 244 Ala. at 485, 13 So.2d at 869. This Court refused to hold that such conduct would constitute negligence as a matter of law and stated, "The law is not so exacting in its requirements." 244 Ala. at 485, 13 So.2d at 869. This Court based its ruling in McCalla upon its recognition that the applicable statute required judgment on the part of the driver, and, therefore, was not a statute the violation of which constituted negligence per se. We reaffirm the principle of law set forth in McCalla. We are of the opinion that where the applicable Rule of the Road requires a judgment to be made on the part of the driver, the reasonable man standard applies and a violation of the statute is not negligence per se. The statute provides that a driver should not move from a lane "until [he or she] has first ascertained that such movement canbe made with safety." Ala. Code 1975, § 32-5A-88(1). (Emphasis added.)
In Triplett v. Daniel, 255 Ala. 566, 52 So.2d 184 (1951), the Court considered Ala. Code 1940, Tit. 36, § 17, which (as paraphrased in Triplett) provided that "the driver of any vehicle upon a highway before stopping shall first see that such movement can be made in safety and whenever the operation of any other vehicle may be affected by such movement shall give a signal as required by the statute." (Emphasis added.) The trial court in Triplett charged the jury that if they believed the evidence they must find that the plaintiff was guilty of negligence as a matter of law in failing to give signals for stopping as required by law. This Court held that the giving of the negligence per se charge constituted error, and stated that "[t]he intent of the statute is to provide that the signal must be given if it appears that the movement or operation of another's car might reasonably be affected by the stopping." 255 Ala. at 568, 52 So.2d at 185. This Court stated that there was no positive rule of the statute that required a motorist always to give the statutory signal before stopping and that, under the circumstances, the trial court's charge that the plaintiff's failure to give the signal would be negligence as a matter of law was inappropriate. The rule considered in Triplett is of the same type as the one at issue here. Both require the driver to operate his vehicle with "safety" and both invoke the reasonable man standard. A negligence per se charge in the present case would have invaded the province of the jury. Triplett, 255 Ala. at 568,52 So.2d at 185.
Other jurisdictions have considered this question and have also held that the violation of certain rules of the road constitute negligence per se, while the violation of others constitute only prima facie evidence of negligence. SeeShort v. Spring Creek Ranch, Inc., 731 P.2d 1195 (Wyo. 1987);Chlopek v. Schmall, 224 Neb. 78, 396 N.W.2d 103 (1986);Klanseck v. Anderson Sales Service, Inc., 426 Mich. 78,393 N.W.2d 356 (1986); Paquin v. Tillinghast, 517 A.2d 246 (R.I. 1986); Mina v. Boise Cascade Corp., 104 Wn.2d 696,710 P.2d 184 (1985); Breitkreutz v. Baker, 514 P.2d 17 (Alaska 1973); and Eisenhunt v. Moneyhon, 161 Ohio St. 367,119 N.E.2d 440 (1954).[3]
 II
At the close of the evidence in this case, the trial court submitted the wrongful death claim to the jury on the issue of negligence on the part of Smith and Consolidated Freightways, and contributory negligence on the part of Enrique Pacheco. In the personal injury claims (Mary and Donnie Pacheco), the court charged the jury on the issue of negligence on the part of Smith and Consolidated Freightways. The court instructed the jury regarding compensatory *Page 351 
damages for the personal injury claims, including pain, mental suffering, medical expenses, lost wages, and the nature, extent, and duration of the injuries. As stated earlier, the jury returned a verdict in favor of the plaintiffs and made these awards: Mary Pacheco as executrix of the estate of Enrique Pacheco — $525,000; Mary Pacheco individually — $250,000; and Donnie Pacheco — $100,000.
Smith and Consolidated Freightways filed a motion for judgment notwithstanding the verdict (JNOV), or in the alternative, a new trial. The trial court denied the JNOV motion and conditionally denied the motion for a new trial, on the condition that Mary agree to remit $150,000 and that Donnie agree to remit $85,000. The trial court stated the following in its order:
 "The court now turns to the mandate in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986), and recites factors considered by the court in denying on the one hand and conditionally granting on the other, a motion for new trial based upon the alleged excessiveness of a jury verdict.
 "It may appear totally inconsistent or incongruous in this particular case, that this court finds the verdict for one plaintiff to not be excessive and then finds the verdicts for the other two cases to be exceedingly excessive when the same jury tried each case or claim at the same time and under the same conditions.
 "Let it be said at the outset, that the court finds that this was an 'average' jury, composed of capable, conscientious, honest, and intelligent men and woman who sincerely undertook to perform their sworn duty as jurors. There is no evidence to the contrary. There is no evidence of any misconduct on the part of any juror nor of any attorney in the case. In the opinion of the court, all parties received a fair and impartial trial. Why then, has this court taken the action set forth in the foregoing order of the court?
 "First, in the death case wherein Mrs. Pacheco-Rivera sued the defendants as the Executrix of her husband's estate.
 Very simply, the conscience of the court was not shocked by a verdict of $525,000.00 for his wrongful death.
 "The record fully reflects the evidence in the case concerning the type vehicle involved, the opportunity to see and observe the nature of the terrain, the time, place and circumstances of the fatal collision, the speed of the respective vehicles and the respective opportunities to have avoided a collision on the bridge when waiting a few more seconds may have avoided the tragedy.
 "Clearly, when considering all facts and circumstances leading up to and surrounding this accident, the jury could and did, reasonably conclude that a verdict of $525,000.00 was an appropriate punishment to the defendants. That this sum of money was directly related to the amount or degree of wrongdoing or culpability of the defendants and was reasonably appropriate to serve as a deterrent to these defendants or to others to prevent similar wrongs and by doing so, to preserve human life.
 "Realizing that this is not 'the test' or criteria, another jury may have awarded less, but many juries may have awarded two to four times as much, given the same facts and circumstances. Experience of the past ten years substantiates this.
 "Again, the amount of this verdict does not shock the conscience of the court, therefore, the court is under the duty not to intervene.
 "Next, the court turns to the case of Mrs. Pacheco-Rivera suing in her individual capacity for her personal injuries and related damages. The verdict in favor of this lady was $250,000.00, which this court found to be excessive in the amount of $150,000.00.
 "This court is aware of the admonitions contained in our cases concerning a trial court interfering with a jury verdict. Many of these cases are cited in Justice Shores' learned opinion in the Hammond v. City of Gadsden case. This court adopts by reference all of these cases *Page 352 
beginning with "The third issue" [493 So.2d at 1378].
 "This court is reluctant to say the jury verdict in this lady's case is flawed because it results not from the evidence and applicable law, but from bias, passion, prejudice, corruption or other improper motive. These are very harsh words.
 "In this case it seems more appropriate to say the verdict resulted from misapplication of the law, misunderstanding of the law, mistake or failure to comprehend or appreciate the awarding of compensatory damages as opposed to punitive damages. Punitive damages were the only damages awardable in the case of the death of her husband.
 "As previously stated, there is no evidence in this case of which this court is aware, that there was any misconduct on the part of any juror or any attorney. However, there is evidence of misapplication of the law, misunderstanding of the law, mistake or failure to appreciate or comprehend the awarding of compensable damages only. The evidence of such, is the amount of the verdict — in light of the evidence concerning the lady's damages.
 "It matters not whether the intervention of the court with a jury verdict is for inadequacy or excessiveness. The amount of the verdict itself is evidence to be considered by a trial court in making such a decision. This legal principle is stated in a number of Alabama decisions. To paraphrase some language used in Spears v. Bishop, 339 So.2d 75, . . . in light of all of the evidence in the case, the verdict itself was sufficient to show bias, mistake or failure to comprehend and appreciate the awarding of compensatory damages.
 "The record shows the full extent of the injuries and damages sustained by the plaintiff and this court deems it unnecessary to recite them in detail. Suffice it to say that this plaintiff had some head and lip lacerations, facial and other bruises and contusions, and some other minor or superficial injuries to other parts of her body. After four or five days in the hospital, she saw a doctor one other time to remove some sutures and then, according to her testimony, she was OK, her son was OK, and she was back on her job in about two to two and one half months after the accident. A doctor testified that she had five percent to ten percent possibility or likelihood of seizures at some time in the future, but none had occurred within approximately two and one half years from the time of the accident to trial. She had about $6,000.00 in special damages which included medical and hospital expenses for herself and her child and her lost wages.
 "The verdict of $250,000.00 shocked the conscience of the court without any doubt. When this happens, the court has the duty to purge its conscience. It is the duty of the trial court to act, the law demands it.
 "In this case, and all others, when faced with the problem of excessiveness, the greater difficulty is not whether remittitur is required, but to what extent, how much? Attempting to answer this question, the court has taken into consideration all of the evidence in the case reflecting upon this plaintiff's injuries and all favorable inferences therefrom; the court has reflected upon the law; hopefully, the court has wisely used thirty five years of experience in the practice of law, ten years of which has been on the bench; general knowledge of verdicts for somewhat comparable injuries and damages which have been rendered by juries during the past ten years. The court has attempted to mold, blend and bend these into the largest verdict for the plaintiff which does not absolutely shock the conscience of the court. Whatever may be the shortcomings, this is as objective as this court knows how to be, without further, additional and detailed guidelines from the Supreme Court of Alabama.
 "Lastly, the court has arrived at the case of Samuel Donald Pacheco-Wilson. The jury awarded $100,000.00 and the court has found this to be excessive to the extent of $85,000.00. *Page 353 
 "Donnie, as he was referred to, was about seven years old at the time of the accident, and about nine years old at the time of the trial. He was in the courtroom before trial and during voir dire examination. The court had the opportunity to observe his person and his activities. He was a fine looking and acting young fellow. The record will disclose that this child had some head injury, evidenced by a short period of unconsciousness. He was observed overnight in the hospital and was subject to being discharged the next day but such could not be done because there was no one to release him to. He stayed in the hospital until his mother was released about four days later. He never saw another doctor. His lawyers and his mother told the jury in substance, that he was shookup [sic], upset, but that in a short time after the wreck he was OK and doing fine. This was also the observation of the court. Donnie did not appear in the courtroom after voir dire and did not testify.
 "Certainly, the jury could reasonably infer and rightly so, that Donnie suffered some head injury, some bruises and soreness, suffered some physical pain, and suffered some mental anguish — but not to the extent and tune of $100,000.00.
 "This verdict shocked the conscience of the court. Therefore, it is the court's duty to require a very substantial remittitur. This the court has done.
 "The court hereby adopts and incorporates herein by reference, all of the applicable written opinion in Mrs. Pacheco-Rivera's case as if fully set out herein.
 "This trial court has struggled with the two personal injury cases and has attempted to comply with the letter and the spirit of Hammond v. City of Gadsden without prolonged and undue dissertation. Hopefully, the court has succeeded."
We have examined the record and the trial court's orders and we cannot say that the trial court's orders of remittitur were palpably wrong.
For the above-stated reasons, the judgment of the trial court, based upon its holdings that a violation of Ala. Code 1975, § 32-5A-88(1), was not negligence per se and that remittiturs were necessary, is due to be, and it hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, ALMON, SHORES, BEATTY, ADAMS, HOUSTON and STEAGALL, JJ., concur.
[1] Alabama's "Rules of the Road" are found at § 32-5A-1 et seq., Ala. Code 1975.
[2] This Court entered an order in 1973, recommending the use of Alabama Pattern Jury Instructions in civil cases. With respect to violations of the rules of the road, the Alabama Pattern Jury Instructions contain two charges: (1) 26.11, "Violation of Rules of the Road — Negligence Per Se"; and (2) 26.12, "Violation of Rules of the Road — Prima Facie Evidence of Negligence." The notes on use following A.P.J.I. 26.11, state that "this charge should be used when the case involves a rule of the road, the violation of which constitutes negligence per se." Likewise, the notes on use following A.P.J.I. 26.12, state that "this charge should be used when the case involves a rule of the road, the violation of which constitutes prima facienegligence only." (Emphasis added.)
[3] In comparing Alabama Pattern Jury Instructions 26.11 and 26.12, it is apparent that the committee that drafted the instructions contemplated that the violation of certain Rules of the Road constitutes negligence per se, while the violation of others constitutes prima facie evidence of negligence. After examining these cases, we are of the opinion that the trial court considered the Rules which were applicable to this case and appropriately determined that a violation of the applicable Rules constituted prima facie evidence of negligence and not negligence per se.