CAIN, etc.

v.

**ARMSTRONG WORLD INDUSTRIES, et al.**

**WEAVER, et al.**

v.

**ARMSTRONG WORLD INDUSTRIES, et al.**

**HICKS, etc.**

v.

**ARMSTRONG WORLD INDUSTRIES, et al.**

**BOLEN**

v.

**ARMSTRONG WORLD INDUSTRIES, et al.**

**CLEMENTS, et al.**

v.

**ARMSTRONG WORLD INDUSTRIES, et al.**

**James WEAVER, et al.**

v.

**ARMSTRONG WORLD INDUSTRIES, et al.**

**BENJAMIN, et al.**

v.

**ARMSTRONG WORLD INDUSTRIES, et al.**

**BROWN, et al.**

v.

**ARMSTRONG WORLD INDUSTRIES, et al.**

**Willard BROWN, et al.**

v.

**ARMSTRONG WORLD INDUSTRIES, et al.**

**Thomas BROWN, et al.**

v.

**ARMSTRONG WORLD INDUSTRIES, et al.**

WILSON, et al.

v.

ARMSTRONG WORLD INDUSTRIES,
et al.

BRUNER, et al.

v.

ARMSTRONG WORLD INDUSTRIES,
et al.

BROOKS

v.

ARMSTRONG WORLD INDUSTRIES,
et al.

Nos. CV–87–1172, CV–87–1179, CV–87–
1180, CV–87–1199, CV–87–1221, CV–87–
1245, CV–87–1256, CV–87–1279, CV–87–
1285, CV–87–1293, CV–87–1299, CV–87–
1305 and CV–87–1316.

United States District Court,
S.D. Alabama, S.D.

Feb. 18, 1992.

**1450**

Russell W. Budd, Lisa Blue, Dallas, Tex., S.C. Middlebrooks, Mobile, Ala., for plaintiff.

Michael B. Kinnard, Knoxville, Tenn., J. Randolph Bibb, Jr., Nashville, Tenn., for defendant.

## MEMORANDUM OPINION AND ORDER

BUTLER, District Judge.

These consolidated actions are before the Court on a motion for judgment notwithstanding the verdict or, in the alternative, for new trials or for remittiturs of damages filed by the defendants, Owens–Illinois, Inc. and Keene Corporation. These thirteen separate actions were consolidated for trial over defendants' objections. Following a fifteen day trial, the jury returned verdicts in favor of each plaintiff. After careful review of the record, the verdicts, the argument of counsel and the applicable law, the Court finds that the motion for j.n.o.v. is due to be denied but that the defendants are entitled to a new trial in each case.

## PROCEDURAL BACKGROUND

These actions consist of ten personal injury and three wrongful death actions arising from the exposure of each plaintiff, or plaintiff's decedent, to asbestos in the workplace. In the majority of cases, exposure allegedly occurred at Alabama Dry Dock and Shipbuilding (ADDSCO). In each case, the plaintiff alleged three theories of recovery: negligence, wantonness and violation of the Alabama Extended Manufacturers Liability Doctrine. Two of the wrongful death actions and seven of the personal injury actions also contain claims for loss of consortium filed by the wife and widow of the worker. Although the defendants varied in each case, substantially the same defendants were named in each case. The issue of knowledge or state of the art was common to each case, as were the defendants' affirmative defenses. Because the actions involved common questions of law and fact and in the interest of judicial economy, the Court consolidated the actions for trial pursuant to the authority of Rule 42 of the Federal Rules of Civil Procedure.

Following a fifteen day trial, the jury deliberated about six hours and returned verdicts in favor of all plaintiffs. In each of the eight non-cancer personal injury cases, the jury awarded compensatory damages of $80,000 for future medical expenses and $500,000 for pain and suffering and punitive damages of $1,500,000 per defendant. In each of the two cancer personal injury cases, the jury awarded compensatory damages of $100,000 for future medical expenses and $750,000 for pain and suffering and punitive damages of $1,500,000 per defendant. In each of the wrongful death cases, the jury awarded $3,000,000 in punitive damages only.[1] For each loss of consortium claim the jury awarded $50,000.

## LEGAL ANALYSIS

### I. MOTION FOR J.N.O.V.

██ The evidence presented at trial does not support a judgment notwithstanding

---

1. Only punitive damages are recoverable under Alabama's wrongful death statute, Ala.Code § 6–5–410 (1975). *Lowe v. General Motors Corp.,* 624 F.2d 1373 (5th Cir.1980); *Deaton v. Burroughs,* 456 So.2d 771 (Ala.1984).

the verdict in any of these actions. The Eleventh Circuit has stated the standard to which a trial court must adhere when considering a motion for judgment notwithstanding the verdict:

All of the evidence presented at trial must be considered "in the light and with all reasonable inferences most favorable to the party opposing the motion." A motion for judgment n.o.v. should be granted only where "reasonable [people] could not arrive at a contrary verdict ..." Where substantial conflicting evidence is presented such that reasonable people "in the exercise of impartial judgment might reach different conclusion, [sic]" the motion should be denied.

*Simon v. Shearson Lehman Bros.*, 895 F.2d 1304, 1310 (11th Cir.1990) (quoting *Castle v. Sangamo Weston*, 837 F.2d 1550, 1558 (11th Cir.1988)).

Despite defendants' assertions to the contrary, plaintiffs in each case have presented sufficient evidence from which a reasonable juror could find the defendants liable. It is unnecessary to reexamine all the testimony here. Suffice it to say that the Court has reviewed the record and that defendants have failed to look at the evidence as the Court must, that is, in the light most favorable to the nonmoving party. Instead, defendants have cited only that testimony favorable to them in most instances. In each personal injury action plaintiff presented evidence that he suffered from an asbestos-related lung disease, that he was exposed to defendants' asbestos-containing products, that each and every exposure was a substantial contributing factor to his injuries and that he suffered damages as a result. In each wrongful death case plaintiff presented proof that her decedent was exposed to defendants' asbestos-containing products and that such exposure was a substantial contributing cause of his death. In short, the evidence is such that reasonable persons might have reached differing conclusions.[2]

## II. MOTION FOR NEW TRIALS

The Court finds that the defendants are entitled to new trials for two reasons. First, new trials are warranted in each of the personal injury actions because the compensatory damages awarded in each case were so excessive as to indicate passion and prejudice on the part of the jury. Second, the consolidation of such a large number of actions involving both personal injury and wrongful death resulted in prejudicial error. Although these are separate grounds for granting the motion for new trial, the two are interrelated.

### A. Excessive Damages

■ There are two issues the Court must confront in deciding a motion for new trial based on excessive damages: (1) whether the amount of the award is excessive and (2) the proper remedy to be applied. State substantive law governs the first issue while federal procedural law governs the second. *Estate of Jackson v. Phillips Petroleum Co.*, 676 F.Supp. 1142, 1152 (S.D.Ala.1987).

Damages are deemed to be excessive under Alabama law "if they shock the judicial conscience or are so great as to indicate bias, passion, or prejudice." *Southern Life & Health Ins. Co. v. Smith*, 518 So.2d 77, 82 (Ala.1987). The compensatory damages awarded each plaintiff in this action not only shock the judicial conscience but also persuade the Court that the jury verdicts were prejudiced by the joinder of all these actions. The compensatory damage awards were divided into two parts: future hospitalization and pain and suffering.

■ The award of future medical expenses is clearly excessive and unsupported by the evidence in the majority of personal injury cases. The jury awarded $80,000 to $100,000 in each personal injury case for future medical expenses. However, in only three of ten cases did plaintiffs prove such amounts. Plaintiffs offered proof of fu-

---

**2.** However, for the reasons discussed in Section II, even though plaintiffs did present some evidence of liability in each case, the Court cannot say that the jury's decision to find in favor of

the plaintiffs was not tainted by the passion and prejudice that resulted from the consolidation of these actions.

ture medical expenses through their medical experts, that each plaintiff would require annual medical monitoring for the remainder of his life as a result of his asbestos-related disease or injury at a cost of $200 to $500 per year. Thus, the maximum recovery per plaintiff for medical monitoring should range from $4,050 to $10,200 depending upon plaintiff's age and life expectancy.[3] For seven of the ten plaintiffs these are the only future medical expenses proven.

In addition to these medical monitoring expenses, three plaintiffs, James Weaver, Jesse Benjamin and Joseph Bruner, offered testimony that they were likely to incur hospitalization costs in the future. Their medical experts testified that because their asbestos-related disease had shown signs of progression, these three plaintiffs were likely to suffer from complications such as lung infections which would require hospitalization. Mr. Weaver's expert estimated the total cost of future hospitalizations as a result of these complications to be $50,000 to $70,000. Dr. Gaeton Lorino, who testified on behalf of Mr. Bruner and Mr. Benjamin, estimated the future hospitalization costs for those plaintiffs to be $80,000 to $100,000. Therefore, the awards of $80,000 to Mr. Bruner and $100,000 to Mr. Benjamin were supported by the evidence. However, the $80,000 awarded to Mr. Weaver still exceeds his proof of future medical expenses ($70,000 for future hospitalization expenses and $4,150 for medical monitoring[4]).

There was no testimony on behalf of any of the other seven personal injury plaintiffs that they were likely to be hospitalized in the future as a result of their asbestos-related disease or injury. The damages awarded these plaintiffs exceeds the proof of future medical expenses by a minimum of almost $70,000. Therefore, the Court finds the damages awarded for future medical expenses in the remaining seven cases were grossly excessive.

■ Likewise, the damages awarded for pain and suffering in each of the personal injury actions was excessive. The Court is mindful that damages for pain and suffering generally should be "left to the sound discretion of the jury." *Durham v. Sims,* 279 Ala. 516, 517, 187 So.2d 558, 559 (1966). The jury's discretion is not unlimited, however, and may be corrected by the court "for clear abuse or passionate exercise." *Id.* Although rare, there are instances where Alabama courts have found damages awarded for pain and suffering to be excessive. *E.g., Consolidated Freightways v. Pacheco–Rivera,* 524 So.2d 346 (Ala.1988); *Coca–Cola Bottling Co. v. Parker,* 451 So.2d 786 (Ala.1984).

Of course, there is no precise formula for determining when an award for pain and suffering is excessive. In making this determination, the Court takes into consideration the testimony most favorable to the plaintiffs as to the nature and extent of the damages inflicted and general knowledge of verdicts awarded in this district for comparable injuries as well as the court's own knowledge and experience. *Pacheco–Rivera,* 524 So.2d at 352.

■ Each plaintiffs' testimony regarding pain and suffering was remarkably similar and can be divided into three major categories: curtailment of activities due to shortness of breath, mental anguish for fear of cancer and, in a few cases, past or future pain and suffering due to asbestos-related illnesses. Without exception, the primary complaint of each plaintiff was that he could no longer do the kind of things around the house or yard (or engage in recreational activities) as he used to because of his shortness of breath. Some complained that their sex lives were affected. All but two of the plaintiffs are over the age of sixty, suggesting that the aging process itself would result in some curtailment of these activities. Several plaintiffs suffer from other illnesses which also con-

---

**3.** These amounts represent the maximum medical monitoring costs ($500) multiplied by the life expectancies of the oldest and youngest plaintiffs, respectively (8.1 years and 20.4 years).

**4.** This amount was calculated by multiplying the maximum medical monitoring costs ($500) times the plaintiff's life expectancy (8.3 years).

tribute to the limitations on their activities. For example, Tulsie Weaver is legally blind and suffers from diabetes. John Wilson is partially paralyzed and cannot speak as the result of a car accident. Joseph Bruner suffers from chronic obstructive pulmonary disease, a smoking-related illness, heart problems and blackouts, all of which are unrelated to asbestos exposure. Most of the plaintiffs had normal pulmonary function, and none of the plaintiffs was determined by any medical testimony to have suffered any degree of permanent disability due to shortness of breath.

The fear of cancer is, in the Court's opinion, the most significant element of suffering in each of these cases. Such fear, however, must be reasonable and genuine and will, of course, vary with the individual. In other words, damages may be awarded only if a plaintiff *does* have a fear of cancer that causes mental anguish, not simply because plaintiff *could* have a fear of cancer. In addition, it is only the mental anguish that is compensable, not the probability of contracting cancer. A few plaintiffs, such as Mr. Bruner and Mr. Wilson, presented testimony that they suffered from periodic episodes of depression due to their fear of contracting cancer. Although their depression resulting from the fear of cancer seemed worse than that of other plaintiffs, neither Mr. Bruner nor Mr. Wilson required psychiatric care, nor were they prevented from carrying on their daily activities. Most of the other plaintiffs simply testified that they worried about the future and the possibility of getting cancer, without giving any specific examples of how that fear has affected them. At least one plaintiff, Jesse Benjamin, did not testify at all concerning fear of cancer.

Physical pain and suffering cannot be considered an element of damage for most of these plaintiffs because there was no evidence offered that there is any pain associated directly with asbestosis. Jesse Benjamin and Thomas Brown presented evidence of past physical pain and suffering because of they had both suffered from cancer in the past; however, both had fully recovered from cancer operations. The jury apparently recognized this injury and

awarded them an additional $250,000 in pain and suffering damages. In addition, plaintiffs Benjamin, James Weaver and Joseph Bruner presented testimony that their asbestos-related diseases had shown signs of progression which indicates the future likelihood of painful complications, such as lung infections.

Even those plaintiffs who presented the most compelling testimony regarding pain and suffering would be adequately compensated with an award substantially less than the amount awarded by the jury. For example, Mr. Bruner presented substantial testimony as to all elements of pain and suffering. Unlike most plaintiffs who were retired, Mr. Bruner testified that he had been laid off work, but had not been called back because of his health problems, most of which are related to chronic obstructive pulmonary disease caused by smoking. At sixty-one, Bruner was one of the youngest plaintiffs. He gave compelling testimony regarding his fear of cancer, especially in light of the fact that he had children living at home. He presented medical evidence that his disease was likely to progress and that he was likely to suffer from lung infections in the future, although the severity and duration of such infections depended to a great extent on how well plaintiff follows his treatment plan.

Even in light of this evidence, half a million dollars in compensatory damages for these injuries is exorbitant. Although the injury is permanent, it is not permanently painful. Mr. Bruner may experience pain associated with lung infections, but the evidence clearly established that those infections are treatable and the pain will subside as the infection is cured. Thus there is no chronic pain. Although Mr. Bruner has been required to curtail activities as a result of shortness of breath, he is still able to function and to carry on his daily activities. Moreover, he was able, as were all other plaintiffs, to sit through the entire fifteen day trial, adhering to the Court's sometimes arduous trial schedule. Fear of cancer is extremely difficult to value; however, it is just that, a fear.

While plaintiffs' anguish and fear is understandable and compensable, it does not appear overwhelming or debilitating.

The excessiveness of these compensatory damage awards becomes even more apparent when compared with jury awards in other asbestos personal injury cases tried in this district. The average compensatory damage award prior to this trial was $169,100.[5] The largest amount of compensatory damages ever awarded prior to this trial was $350,000.[6]

■ When confronted with an excessive damage award the Court has several options.

> If the passion, prejudice, caprice, undue sympathy, arbitrariness, or more taints only the damage award and not the liability assessment, the proper response is a remittitur or a new trial addressed to damages alone. But, if it appears that the improper jury action, in reasonable probability, affected both the liability and damages issues, then a new trial as to both issues must be ordered.

*Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 282 (5th Cir.1975). *Edwards* offers some guidance in determining whether the liability as well as damages issues were tainted. In that case the appellate court found that a complete new trial was required because: (1) the liability issue was closely contested, (2) counsel made improper arguments to the jury, (3) the trial court found the award of damages to be grossly excessive, and (4) the jury was swayed by passion and prejudice and failed to respond to the trial court's instructions. *Id.* at 283.

Because most of the same factors are present in this case, the Court finds that a new trial is necessary as to all issues. First, liability was strongly contested in each case, including the wrongful death cases. Defendants not only contested the medical causation of each plaintiff's injuries but also contested an issue common to all plaintiffs, state of the art or foreseeability. Second, as discussed above, the compensatory damages in most cases were not only greatly disproportionate to the injury in each of the personal injury cases but also unsupported by the evidence in many cases.[7] Finally, and as discussed below, it appears that the consolidation of these actions was prejudicial and that the jury failed to follow the Court's instructions to consider each case separately.

### B. Consolidation

■ The prejudicial effect of the consolidation of these actions is not only indicative that the liability determinations were tainted but is also in itself a ground for granting the motion for new trial. *See Arnold v. Eastern Air Lines, Inc.*, 712 F.2d 899 (4th Cir.), *cert. denied*, 460 U.S. 1102, 103 S.Ct. 1801, 76 L.Ed.2d 366 (1983) and 464 U.S. 1040, 104 S.Ct. 703, 79 L.Ed.2d 168 (1984) (New trial granted due to prejudicial effect of consolidation of actions against airlines and their insurers). A trial court's decision to consolidate actions for trial will be overturned only if it amounts to abuse of discretion. *Hendrix v. Raybestos–Manhattan*, 776 F.2d 1492 (11th Cir.1985). The combination of factors present in this instance lead the Court to the overwhelming

---

5. It should be noted that this figure includes awards in *Hudgens v. National Gypsum Co.*, No. 89–0772, in which nine personal injury actions were consolidated and tried before the Hon. Alex T. Howard, Chief Judge, immediately prior to the trial of these actions. Motions for new trials or remittiturs are pending in those actions. If those actions are excluded, the average is $86,291.

6. This award occurred in *Coleman v. National Gypsum Co.*, one of nine consolidated cases described in footnote 5.

7. The Court finds it unnecessary to analyze the punitive damages under the framework set forth in *Green Oil v. Hornsby*, 539 So.2d 218

(Ala.1989) and *Hammond v. City of Gadsden, et al*, 493 So.2d 1374 (Ala.1986) at this time. The amount of compensatory damages alone is so excessive that when considered in light of the factors enumerated in *Edwards*, leads the Court to conclude that the liability determinations, not just the damage awards were tainted, and must be set aside. Of course, if the liability determinations fail so must the punitive damage awards. Likewise, it is unnecessary to separately analyze the loss of consortium claims since such claims are based on derivative liability. *See Mattison v. Kirk*, 497 So.2d 120 (Ala.1986).

conclusion that the consolidation of these actions was unduly prejudicial.

■ This Court recognizes that consolidation of asbestos cases for trial is common. *See, e.g., Johnson v. Celotex Corp.,* 899 F.2d 1281 (2d Cir.1990) (upholding the consolidation of two asbestos actions) (and cases cited therein). In *Hendrix,* the Eleventh Circuit upheld the consolidation of four asbestos actions for trial where the plaintiffs had similar exposure and work histories and each suffered from asbestosis. In a decision to consolidate the court must consider:

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudication of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Hendrix,* 776 F.2d at 1495 (quoting *Arnold v. Eastern Air Lines, Inc.,* 681 F.2d 186, 193 (4th Cir.1982). The trial court "must also bear in mind the extent to which the risks of prejudice and confusion ... can be alleviated by utilizing cautionary instructions to the jury during the trial and controlling the manner in which the plaintiffs' claims ... are submitted to the jury for deliberation." *Id.*

It is evident (unfortunately, in hindsight) that despite all the precautionary measures taken by the Court (e.g., juror notebooks, cautionary instructions before, during and after the presentation of evidence, special interrogatory forms) the joint trial of such a large number of differing cases both confused and prejudiced the jury. This confusion and prejudice is manifest in the identical damages awarded in the non-cancer personal injury cases and in the cancer personal injury cases, the relatively short deliberation time as well as in the inflated amounts of many of the damage awards and the lack of evidence supporting some of the damages in several cases.

It appears that the jury simply lumped the personal injury plaintiffs into two categories and gave plaintiffs in each category the same amount of compensatory damages no matter what their injuries. Two of the personal injury plaintiffs, Thomas Brown and Jesse Benjamin, had in the past suffered from cancer and were diagnosed as suffering from asbestosis. Each of those plaintiffs received $100,000 for future medical expenses and $750,000 for pain and suffering.

The remaining personal injury plaintiffs each presented testimony that they suffered from asbestos-related lung disease of varying severity. Each was awarded $80,000 for future medical expenses and $500,000 for pain and suffering. It is inconceivable to the Court that a properly functioning jury could have awarded the same amount in each case. Compare, for example, plaintiffs' evidence as to George Brown with Joseph Bruner, whose injuries are discussed above. Viewing the evidence in the light most favorable to the plaintiff, Brown was diagnosed with mild asbestosis, x-rays revealed mild scarring consistent with asbestosis, pulmonary function tests show no impairment in Brown's lung function. At age 59, George Brown at the time of trial was still working forty hours a week as a shipyard worker, an occupation which requires a good deal of physical stamina. By his own physician's testimony, his disease is unlikely to progress and his life expectancy has not been diminished by his disease. His major complaints are that "when I get home from work I'm worn out" and he cannot hunt and fish like he used to and cannot do things around the house like he used to. These complaints are hardly surprising considering his age and work schedule. Brown also testified that he worries about the possibility of contracting cancer.

A comparison of the awards in these cases with awards in similar asbestos cases tried in this district also supports the conclusion that the jury failed to consider each case separately. Prior to the trial of the cases at hand, five groups of asbestos cases had been consolidated and tried to verdict in this district. Identical verdicts were the exception, rather than the rule in

these cases. For example, in *Foster, et al v. Celotex*, No. 87–0693 in which four cases were consolidated for trial, the jury awarded compensatory damages of $6,500, $161,-353, $128,558 and $6,500. In *McDuffie, et al v. Celotex*, No. 87–541, the jury found in favor of the defendants in each of the four cases. In *Allen v. Celotex*, No. 87–1039, in which three personal injury actions were consolidated for trial jury awarded $50,000 in compensatory damages and $50,000 in punitive damages to one plaintiff but found in favor of the defendants in the other two cases. In *Cook v. Celotex*, No. 87–807, the jury awarded compensatory damages of $90,000, $130,000, $125,000 and $125,000, respectively, in the four cases consolidated for trial. Finally, in *Hudgens v. National Gypsum Co.*, No. 89–0772, Judge Howard consolidated nine personal injury actions for trial. The jury awarded the following compensatory damages in each case; $275,-000, $325,000, $250,000 (2 cases), $225,000 (4 cases), and $350,000.[8] It is also worthy to note that all of these trials involved only personal injury claims and, with the exception of the *Hudgens* group, no more than four cases have been tried together. It appears, therefore, that when fewer cases are consolidated for trial, the jury is better able to consider the cases separately and return verdicts based on the facts of each case.

Further evidence that the jury failed to consider each case on its own merits is the relatively short deliberation time in comparison with the length of trial and the volumes of evidence presented. After a fifteen day trial, the jury deliberated approximately six hours. During this time the jury was required to determine liability in each of thirteen cases, compensatory damages as to ten plaintiffs, loss of consortium as to nine plaintiffs, and punitive damages as to each defendant.

It is not this Court's opinion that asbestos actions can never be consolidated for trial. Rather, consolidation simply did not work in this instance. The number of cases consolidated, the amount of evidence to be considered, the differing injuries in-

volved and the unique aspects of Alabama's wrongful death statute all contributed to make consolidation of these cases unworkable.

After considering the combination of these factors, the Court is compelled to grant defendants' motion for new trials as to all actions, including the actions for wrongful death. Plaintiffs had argued that even if a new trial is granted as to the personal injury plaintiffs, the wrongful death verdicts should stand. Relying on an argument in defendants' brief, plaintiffs contend that, if anything, the wrongful death actions prejudiced the jury's decisions as to the personal injury actions. This is pure speculation.

When the prejudice results from consolidation, the Court is not free to conclude that the error affected only some cases and not others.

> [I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.

*O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1308 (5th Cir.1977). Liability was strongly contested in all of the wrongful death cases as it was in the personal injury cases. Because wrongful death damages are punitive in nature, the prejudice is not apparent from the face of the verdicts themselves. However, given the nature of the error and prejudice in this instance the Court cannot conclude that the judgment in the wrongful death cases was not swayed by the error.

CONCLUSION

The decision to grant new trials has not been made lightly. The Court has spent many months reviewing the trial transcript, studying the applicable law and weighing the options available. This Court, when faced with the problem of nearly one hundred pending asbestos cases on its docket, and more surely to come, made a decision. The congestion these cases caused in this district for all civil litigants gives one a

---

**8.** As noted above, a motion for new trial or remittitur is pending in these actions.

skewed view of how to resolve the problem. The "Try-as-many-as-you-can-at-one-time" approach is great if they all, or most, settle; but when they don't, and they didn't here, thirteen shipyard workers, their wives, or executors if they have died, got a chance to do something not many other civil litigants can do—overwhelm a jury with evidence. Evidence that would not have been admissible in any single plaintiff's case had these cases been tried separately. As the evidence unfolded in this case, it became more and more obvious to this Court that a process had been unleashed that left the jury the impossible task of being able to carefully sort out and distinguish the facts and law of thirteen plaintiffs' cases that varied greatly in so many critical aspects.

In the final analysis, the Court is convinced that the defendants did not receive a fair trial. Because the jury verdict was not only excessive but also tainted by prejudice, the Court is compelled to grant new trials in each case.

Accordingly, it is ORDERED that defendants' motion for new trials be and hereby is GRANTED. It is FURTHER ORDERED that defendants' motion for judgment notwithstanding the verdict is DENIED.