# \IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-IA-00398-SCT

*JANSSEN PHARMACEUTICA, INC., JOHNSON &
JOHNSON, JOSEPH L. FAISON, M.D., EDWARD
QUINONES, M.D., JAMES RISER, M.D., AND BILLY
WANSLEY, ET AL.*

*v.*

*COLANTHA ARMOND, ET AL.*


| | |
|---|---|
| DATE OF JUDGMENT: | 2/24/2003 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | DONNA BROWN JACOBS |
| | CHRISTY D. JONES |
| | JOHN C. HENEGAN |
| | MICHAEL BRADFORD HEWES |
| | ANITA K. MODAK-TRURAN |
| | KARI LOUISE FOSTER |
| | RICHARD  B. GOETZ |
| | CHARLES   C. LIFLAND |
| | WALTER ESTES DELLINGER |
| | ROBERT L. JOHNSON, III |
| | AMANDA CLEARMAN WADDELL |
| | J. ROBERT RAMSAY |
| | JOHN LEWIS HINKLE |
| | AL NUZZO |
| | JOE R. COLINGO |
| | STEPHEN WALKER BURROW |
| ATTORNEYS FOR APPELLEES: | RICHARD ARTHUR FREESE |
| | MERRIDA COXWELL |
| | RICHARD O. BURSON |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 02/19/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COBB, JUSTICE, FOR THE COURT:**

¶1.     Colantha Armond and 55 other Mississippi Plaintiffs ("Plaintiffs") filed suit in the Jones County Circuit Court for injuries they claimed were caused by a prescription medication, Propulsid.   Named as defendants were the makers of Propulsid, Janssen Pharmaceutica, Inc., a New Jersey corporation, and its New Jersey based parent corporation Johnson and Johnson ("Janssen"); 42 Mississippi physicians ("Physicians") who allegedly prescribed Propulsid to the various plaintiffs; and South Central Regional Medical Center. Armond and the medical center are the only Jones County residents.

¶2.     The plaintiffs seek recovery on the following theories:  strict liability, negligence, breach of warranty, negligent misrepresentation, fraud and deceit/civil conspiracy, agent misrepresentation, products liability, and medical malpractice/negligence.  They seek to hold all defendants jointly and severally liable to each plaintiff for compensatory and punitive damages.

¶3.     The defendants filed a Motion to Sever and Transfer Venue for Separate Trials.  The circuit court denied that motion as well as defendants' oral motion for certification of interlocutory appeal.[1]  Defendants' Petition for Interlocutory Appeal by Permission Pursuant

---

[1] The trial judge based his denial of the motion to sever on ***Illinois Central R.R. v. Travis***, 808 So.2d 928 (Miss. 2002).

2

to M.R.A.P. 5(a), was granted by this Court. They raise a number of issues which have been restated for clarity here.

    **I.    WHETHER PLAINTIFFS SATISFY THE REQUIREMENTS FOR PERMISSIVE JOINDER UNDER MISSISSIPPI RULE OF CIVIL PROCEDURE 20(A)?**

    **II.    WHETHER JOINDER OF PLAINTIFFS DEPRIVES DEFENDANTS OF DUE PROCESS UNDER U.S. CONSTITUTION, AMENDMENT XIV, AND MISSISSIPPI RULE OF CIVIL PROCEDURE 42, BECAUSE JOINT TRIAL OF PLAINTIFFS' CLAIMS WILL RESULT IN CONFUSION AND UNFAIR PREJUDICE, DEPRIVING DEFENDANTS OF THE RIGHT TO A FAIR TRIAL?**

    **III.    WHETHER MISSISSIPPI RULE OF CIVIL PROCEDURE 82(C) MAY CONSTITUTIONALLY EXPAND STATUTORY VENUE RIGHTS FOR PLAINTIFFS WHO WOULD OTHERWISE HAVE NO STATUTORY BASIS FOR VENUE IN JONES COUNTY UNDER MISSISSIPPI LAW?**

¶4.    This case brings to light important issues of joinder and venue under Mississippi law in complex personal injury suits which involve: multiple diverse plaintiffs suing multiple diverse defendants; combinations of medical malpractice, products liability, and other diverse claims; complex causation issues with voluminous amounts of evidence; and potentially large damage awards. Although the defendants have raised three issues in this appeal, we find the issue of proper application of Rule 20 to be dispositive and, thus, do not reach the remaining issues.

¶5.     Of the 56 plaintiffs joined in this case, only one resides in Jones County[2] and none of the 42 physician defendants resides there.  Janssen characterizes the action as "bald forum shopping," and asserts that Mississippi courts are in dire need of guidance on the issues of venue and joinder.  Because we have not before been presented with a case that tests the limits of Mississippi Rule of Civil Procedure 20(a), it is understandable that courts are unsure what, if any, limits exist.  For example, recent interpretations by federal courts have found that M.R.C.P. 20 would allow joinder of plaintiffs in circumstances where F.R.C.P. 20 would not, even though the text of the two rules, in essence, are the same.  One federal court has stated:

> Given the Mississippi Supreme Court's holdings that joinder of the plaintiffs' claims in *Norman* and in *Travis* was not improper, we are unable to say that under Mississippi law it was improper for the plaintiffs in these cases to join their claims as they did.  Therefore, even though it seems unlikely to us that joinder in those cases would be appropriate under Federal Rule 20, there is no basis for a finding of fraudulent misjoinder under Mississippi law.

*In re Bridgestone/Firestone, Inc*., 260 F. Supp. 2d 722, 730-31 (S.D. Ind. 2003) (referring to *Prestage Farms, Inc. v. Norman*, 813 So.2d 732, 735 (Miss. 2002) and *Illinois Central R.R. v. Travis*, 808 So.2d 928, 931 (Miss. 2002)).  In *Jamison v. Purdue Pharma Co.*, 251 F. Supp. 2d 1315 (S.D. Miss. 2003), the federal court said "[t]his situation presents a dilemma for a district court confronted with a removed case consisting of parties who are properly joined under Mississippi's Rule 20, but misjoined under that rule's federal counterpart." *Id.* at 1320.

---

[2] Twenty-three plaintiffs reside in Harrison County, 18 in Jackson County, five in Hancock County, two in George County, two in Pearl River County, one in Greene County, and four in unnamed counties.

4

¶6. In the relatively few joinder cases decided by this Court to date, we have given broad discretion to the trial court to allow joinder of claims. *See Ill. Cent. R.R. v. Travis*, 808 So.2d 928, 931 (Miss. 2002) ("The general philosophy of the joinder provisions of these Rules is to allow virtually unlimited joinder at the pleading stage, but to give the Court discretion to shape the trial to the necessities of the particular case."). However, we have not heretofore been faced with facts as compelling as those in the current case, which are in stark contrast to those in prior cases decided by this Court. *See Am. Bankers Ins. Co. v. Alexander*, 818 So.2d 1073 (Miss. 2001).

¶7. We hold today that the prescribing of the drug Propulsid by 42 different physicians to 56 different patients did not arise out of the same transaction, occurrence, or series of transactions or occurrences, and that joinder in this case unfairly prejudices the defendants. We hold that this joinder was improper and that the trial court abused its discretion in denying the motion to sever and transfer. We reverse the trial court's order and remand the case for severance of all claims against defendants who have no connection with Armond. This would include all physicians who have not prescribed Propulsid to Armond. We also instruct the trial court to transfer the severed cases to those jurisdictions in which each plaintiff could have brought his or her claims without reliance on another of the improperly joined plaintiffs.

**FACTS**

¶8. Propulsid is a prescription medication manufactured by Janssen Pharmaceutica, Inc., used to treat gastroesophageal reflux disease (GERD). The Food and Drug Administration (FDA) approved Propulsid for sale in the United States in July 1993, after 12 years of research

5

and clinical testing and more than five years of use in Europe by millions of patients. The 1993 package insert noted that there had been rare reports of tachycardia (rapid heartbeats) in patients taking Propulsid, but no incidents involving serious injury or death. In late 1994, Janssen received two reports of patients who experienced a potentially fatal heart arrhythmia known as "torsade de pointes." These patients were also taking the drug ketoconazole, an antifungal medication. After a drug interaction study was performed, a new package insert was issued in February, 1995, warning against taking Propulsid with this and other medications. During the seven years after FDA approval for sale in the U.S., the package insert for Propulsid was revised five times: in February 1995, October 1995, June 1998, May 1999, and January 2000. Along with the new package inserts, Janssen sent hundreds of thousands of "Dear Doctor" letters to inform physicians and pharmacists of the revised safety information. During the period from 1993 to 2000, there were reports of about 300 cardiac events among the approximately ten million patients given Propulsid in the United States. Due to the potential seriousness of such an event, Janssen decided to make Propulsid available only through an investigational limited access program in May 2000. Janssen claims that this decision to withdraw Propulsid from commercial distribution has sparked thousands of claims across the country that Propulsid has caused all manner of injuries.

## STANDARD OF REVIEW

¶9.     The standard of review regarding joinder and venue is abuse of discretion. *Ill. Cent. R.R. v. Travis*, 808 So.2d 928, 931 (Miss. 2002). *See also **Am. Bankers Ins. Co. of Florida v. Alexander**, 818 So.2d 1073, 1075-76 (Miss. 2001); **Stubbs v. Miss. Farm Bureau Cas.***

6

*Ins. Co.*, 825 So.2d 8, 12 (Miss. 2002); *Earwood v. Reeves*, 798 So.2d 508, 512 (Miss. 2001); *Salts v. Gulf Nat'l Life Ins. Co.,* 743 So.2d 371, 373 (Miss. 1999); *Estate of Jones v. Quinn,* 716 So.2d 624, 626 (Miss. 1998). "Ultimately, the controlling principle here is that it is the plaintiff's choice to decide where to sue the defendant among the permissible venues." *Forrest County Gen. Hosp. v. Conway*, 700 So.2d 324, 326 (Miss. 1997). *See also* *Clark v Luvel Dairy Prods., Inc.*, 731 So.2d 1098, 1106 (Miss. 1998). A plaintiff's choice of a forum should not be disturbed except for weighty reasons. *Stubbs*, 825 So.2d at 14; *Ill. Cent. R.R. v. Samson,* 799 So.2d 20, 25 (Miss. 2001); *Salts*, 743 So.2d at 373; *Burgess v. Lucky*, 674 So.2d 506, 510 (Miss. 1996).

## DISCUSSION

¶10. Plaintiffs claim that they have been injured in various ways as a result of using Propulsid. They argue that the harm they suffered was caused by Janssen's conduct: specifically, inadequate development, testing, and manufacture of Propulsid, which led to the marketing of an unreasonably dangerous product. Plaintiffs further claim that Janssen misrepresented the results of testing on Propulsid, mislabeled the product, engaged in fraudulent advertising and marketing campaigns for Propulsid, and continued to sell the product after its dangers were known or should have been known. They charge each physician defendant with negligence in prescribing Propulsid to one or more of the plaintiffs.

¶11. Janssen argues that the 55 non-Jones County plaintiffs were improperly joined under Rule 20 of the Mississippi Rules of Civil Procedure because Plaintiffs' claims do not meet

the requirement of Rule 20 that they must "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences."[3]   Rather, there are 56 separate and individual transactions, each composed of individual facts and circumstances surrounding each patient's medical condition and history, and each doctor's decision to prescribe Propulsid to the patient. Liability, causation, and damages inquiries will also be different with each individual plaintiff.

¶12.   The record in the current case reflects that the 56 plaintiffs, inter alia:  have different medical histories; allege different injuries at different times; ingested different amounts of Propulsid over different periods of time; received different advice from 42 different doctors who, in turn, received different information about the risks associated with the medication via six different warning labels utilized during the time covered by this lawsuit, and who each had his or her own reasons to prescribe Propulsid for the patients.

¶13.   Plaintiffs argue that Rule 20 gives broad discretion to courts to determine how and when claims are tried.  *First Investors Corp. v. Rayner*, 738 So.2d 228, 238 (Miss. 1999). They cite *American Bankers Ins. Co. v. Alexander* for the proposition that an appellate court cannot substitute its own view for the findings of a trial court regarding joinder. 818 So.2d 1078 (Miss. 2001) (quoting *Bobby Kitchens Inc. v. Miss. Ins. Guar. Ass'n*, 560 So.2d 129, 135 (Miss. 1989) ("The better choice would have been to allow joinder, but we find, considering the uncertain state of the law, that the trial court's denial of joinder was not an

---

[3]M.R.C.P. 20(a) states in pertinent part: "All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact common to all these persons will arise in the action. . . ."

abuse of discretion.")). Additionally, the trial court's decision should be affirmed unless it applied the wrong legal standard or its abuse of discretion caused prejudice to the complaining party. *Prestage Farms Inc. v. Norman*, 813 So.2d at 735.

¶14. However, as stated in the comment to M.R.C.P. 20, this broad discretion is not unlimited. In *Kiddy v. Lipscomb*, 628 So.2d 1355 (Miss. 1994), this Court held that the trial court abused its discretion when it severed a plaintiff's claims against a second physician defendant, and remanded with instructions that the two actions be joined. Janssen argues that this Court should hold that a trial court also abuses its discretion by joining parties in cases failing to satisfy the two requirements of Rule 20. We agree.

¶15. The comment to Rule 20 states both that "[t]he general philosophy of the joinder provisions of these rules is to allow *virtually unlimited joinder* at the pleading stage" and:

> Joinder of parties under Rule 20(a) *is not unlimited* . . . . Rule 20(a) imposes two specific requisites to the joinder of parties: (1) a right to relief must be asserted by or against each plaintiff or defendant relating to or arising out of the same transaction or occurrence; and, (2) some question of law or fact common to all the parties will arise in the action. *Both of these requirements must be satisfied in order to sustain party joinder under Rule 20(a). . . .*

M.R.C.P. 20 cmt. (emphasis added). The issue, then, is where to draw the line with respect to what is considered "the same transaction, occurrence, or series of transactions or occurrences." Plaintiffs ask this Court to extend the rule to allow multiple unconnected plaintiffs' actions against multiple unconnected defendants, where independent doctors prescribed at different times and places, the same drug, Propulsid, to different patients. Defendants ask the Court to place some limit on Mississippi's "virtually unlimited joinder" by

9

finding that the many separate doctor-patient prescribings of Propulsid do not arise from the same transaction, occurrence, or series of transactions or occurrences.

¶16.    Defendants cite federal district court cases denying joinder of plaintiffs with product liability claims,[4] indicating both Rule 20 and due process issues. They also cite appellate court decisions reversing trial courts for improper joinder of these claims.[5] Plaintiffs cite three pertinent Mississippi cases dealing with issues of mass joinder.[6] In each case, this Court upheld the trial judge's decision to allow the joinder. In reviewing these cases, we conclude that the present case is clearly distinguishable from our prior decisions.

¶17.    The plaintiffs in *American Bankers Ins. Co. v. Alexander*, 818 So. 2d 1073 (Miss. 2001), borrowed money from Fidelity Financial services. Plaintiffs alleged that Fidelity conspired with American Bankers to purchase force-placed collateral protection insurance for their borrowers at substantially inflated rates and that Fidelity received a kickback on each transaction. Plaintiffs argued that joinder was proper because there was a single master policy covering all plaintiffs, and all coverages were exactly the same, with the premiums dependent only on the outstanding loan balance at the time. There was no decision to be made on a case-

---

[4] *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 1995 WL 428683 (E.D. Pa. 1995); *In re Asbestos II Consol. Pretrial*, 1989 WL 56181 (N.D. Ill. 1989).

[5] *In re Chevron, U.S.A, Inc.*, 109 F.3d 1016 (5th Cir. 1997); *Malcolm v. Nat. Gypsum Co.*, 995 F.2d 346 (2d Cir. 1993); *Garber v. Randell*, 477 F.2d 711 (2d Cir. 1973); *Gwathmey v. United States*, 215 F.2d 148 (5th Cir. 1954).

[6] *Prestage Farms, Inc. v. Norman*, 813 So.2d 732, 735 (Miss. 2002); *Ill. Cent. R.R. v. Travis*, 808 So.2d 928, 931 (Miss. 2002); *Am. Bankers Ins. Co. v. Alexander*, 818 So.2d 1073 (Miss. 2001).

by-case basis, and there was nothing unique or individual about the defendants' treatment of any of the plaintiffs. *Id.* at 1076-77.

¶18.   We distinguished the facts of *American Bankers* from *Insolia v. Philip Morris, Inc.*, 186 F.R.D. 547, 549 (W.D. Wis. 1999) (a case brought by three former smokers and their spouses against several cigarette manufacturers and trade organizations) because in *Insolia*, "each plaintiff's claim arose out of a unique set of facts and circumstances and 'the only thread holding these disparate factual scenarios together is the allegations of an industry-wide conspiracy. . . .'" *American Bankers*, 818 So.2d at 1076 (citations omitted).

¶19.   Additionally, this Court in *American Bankers* distinguished *Grayson v. K-Mart Corp*, 849 F. Supp. 785, 790-91 (N.D. Ga. 1994). *Grayson* was an age discrimination case brought by eleven former employees of K-Mart, working in different stores and terminated by different managers. This Court stated that:

> A joint trial of plaintiffs' claims would have involved eleven different factual situations, eleven sets of work histories, eleven sets of witnesses and testimony, and the laws of four different states. The case at bar stands in stark contrast to the factual situations in *Grayson*. Here, each plaintiff has alleged the very same claims involving the same insurance policies. As such, the prejudice and confusion contemplated by the defendant is not sufficient to warrant separate trials.

*American Bankers*, 818 So.2d at 1079.  This Court found that joinder of the plaintiffs' claims was proper pursuant to Rule 20 as the claims arose out of the same pattern of conduct, the same type of insurance, involved interpretation of the same master policy, and all claims were similar with the exception of the actual dollar amount charged on premiums.  *Id.*

11

¶20. The present case more closely resembles *Grayson*, in that a joint trial would require 56 different fact situations, 56 sets of medical histories, and 56 sets of witnesses and testimony, all in addition to addressing the myriad causation and other products liability issues. Instead of fostering efficiency, such a trial would unavoidably confuse the jury and irretrievably prejudice the defendants.

¶21. An additional distinguishing issue raised in *American Bankers*, not found in the present case, is that in *American Bankers*, each individual claim was too small to justify a separate trial. This Court stated that "we have fashioned our Rules of Civil Procedure to handle cases of this type under Rule 20 and 42." *American Bankers*, 818 So.2d at 1078. In contrast, personal injury cases such as the current case generally involve much larger damage claims.

¶22. *Prestage Farms, Inc. v. Norman*, 813 So.2d 732 (Miss. 2002), is also easily distinguished from the current case. Defendants were Prestage Farms and seven of its contract hog growers. Plaintiffs were other farmers and residents of the area around the hog farms. Prestage basically controlled a diverse operation, working through farmers who were under instruction by Prestage in nearly every aspect of the hog raising business. Prestage specified the facilities to be used, the manner of construction, and set the methods and procedures to be carried out by the growers who raised the hogs for sale to Prestage. Relying mainly on *American Bankers*, and distinguishing the case from *Grayson* and *Greene v. Mobil Oil Corp.*, 188 F.R.D. 430 (E.D. Tex. 1999) ( joinder of many plaintiffs with differing types and amounts of damages would prejudice the defendants in the eyes of the jury), this Court held that the

12

plaintiffs' claims involved many common questions of law and fact and arose out of the same series of occurrences or transactions. Specifically, this Court determined that *Prestage Farms* involved essentially the same situation as presented in *American Bankers*. *Prestage Farms,* 813 So.2d at 736.

¶23. The third Mississippi case relied on by Plaintiffs to support the joinder of plaintiffs is *Illinois Central R.R. v. Travis*. In *Travis*, 99 plaintiffs, mostly non-Mississippi residents, joined in filing suit against a single employer for injuries sustained by alleged exposure to asbestos while employed with Illinois Central Railroad Company (ICR). This Court found that the lower court did not abuse its discretion in allowing the joinder of these plaintiffs. *Travis*, 808 So.2d at 936. The Court found that all the claims arose out of ICR's policy of not warning or protecting its workers from the hazards of asbestos exposure, and breaching its non-delegable duty to provide a reasonably safe place to work. *Id.* at 935-36.

¶24. As in *American Bankers*, in *Travis* we distinguished the *Travis* case from those offered by the defendant. One such case was *Demboski v. CSX Transp., Inc.*, 157 F.R.D. 28 (S.D. Miss. 1994), a case involving four separate railroad crossing accidents. This Court noted that the *Demboski* complaint involved:

> different plaintiffs, separate accidents, different crossings, different train crews, different dates and times, different driver conduct, different vehicles, different injuries, different damages, different defensive postures, and different physical facts which relate to federal preemption. Based on this, the judge found that "[a]lthough Plaintiffs may develop some evidence indicating negligence on the part of Defendant that will be common to all claims, this Court is persuaded that common sense dictates that the evidence in other instances as to each specific

13

incident will be so dissimilar that it would be very difficult to manage a consolidated trial."

*Travis*, 808 So.2d at 934. *Travis* is also distinguishable from this case because it involved a single defendant whose negligence was present in each plaintiff's claim. This is not true in the present case where each doctor-patient pair presents a different set of factual issues. There is no litigable event common to all the parties.

¶25. Janssen argues that *Travis* is also distinguishable because the claims involved "signature" diseases from the exposure to asbestos. Asbestos claims lend themselves more easily to aggregation because they arise from a "mature tort." This is because asbestos litigation has been around for decades, and courts have had ample opportunity to evaluate medical, scientific and other factual issues relating to asbestos exposure, and the courts understand better when aggregation of claims is appropriate. *See, e.g., In re Ethyl Corp.*, 975 S.W.2d 606, 612-15 (Tex. 1998) (explaining factors that bear on the permissibility of aggregation in asbestos cases). Additionally, all parties understand better the value of asbestos claims, allowing for settlement in many cases.

¶26. In contrast, Propulsid claims arise from an "immature tort." Because scientific, legal, and factual issues related to "immature torts" are novel and unsettled, mass joinder is inappropriate and "until enough trials have occurred so that the contours of various types of claims within the . . . litigation are known, courts should proceed with extreme caution in consolidating claims." *In re Bristol-Myers Squibb Co.*, 975 S.W.2d 601, 603 (Tex. 1998).

14

¶27.    Plaintiffs argue that all claims against Janssen arise as a result of the defective, and unreasonably dangerous character of Propulsid, which is due to negligence in manufacturing, compounding, testing, inspecting, labeling and marketing of the drug.  They argue that the existence of multi-district litigation (MDL)[7] further underscores the existence of common facts in this case.  However, the fact that none of these claims, nor the federal MDL, involves conduct by defendant physicians, but only pertain to plaintiffs and Janssen, gives further support to our holding that claims against physician defendants are improperly joined.

¶28.    *In re Rezulin Products Liability Litigation*, 168 F. Supp. 2d 136, 145 (S.D.N.Y. 2001), consolidated several Rezulin cases for MDL pretrial proceedings.  One of the consolidated cases, *Polehouse v. Parke-Davis*, No. 01 Civ. 971, was a Mississippi case in which plaintiff alleged claims against the drug manufacturers.  A second plaintiff joined, alleging the same claims against the drug manufacturer, but also alleging claims against a home health care provider.  The federal district court stated that the additional claims against the health care provider for negligent administration of Rezulin after its withdrawal from the market did not arise out of the same transaction or occurrence as the claims against the drug manufacturers for negligent marketing and distribution and failure to warn.  The court cited other cases for

[7] *In re Propulsid Product Liability Litigation*, 208 F.R.D. 133 (E.D. La. 2002), pertains to the federal Propulsid MDL and the federal district court for the Eastern District of Louisiana has been designated to conduct all the pretrial proceedings for Propulsid cases.  In federal multi-district litigation (MDL) proceedings, civil actions arising in different federal district courts throughout the nation are temporarily transferred to a single designated district for pretrial proceedings.  The claims must involve common questions of fact and the transfer must be for the convenience of the parties and witnesses and must promote the just and efficient conduct of such actions. The cases are then remanded to the original court for separate trials, after the pretrial issues are resolved.

15

support of this holding, 168 F. Supp. 2d at 144-45, including:  *In re Diet Drugs*, No. Civ. A. 98-20478, 1999 WL 554584, at * 4 (E.D. Pa. July 16, 1999) (plaintiffs alleging claims against drug manufacturers were misjoined because "the claims of plaintiffs who have not purchased or received diet drugs from an identical source, such as a physician, hospital or diet center, did not satisfy the transaction or occurrence requirement.");  *Simmons v. Wyeth Laboratories*, 1996 WL 617492, at *2 (E.D. Pa. Oct. 24, 1996) (plaintiffs alleging similar claims against drug manufacturers were misjoined because "plaintiffs do not allege the exact nature of their injuries or damages, other than averring that plaintiffs experience one or more of numerous injuries and side effects."  Plaintiffs' allegations could not "be said to have arisen from the same basic set of facts."); and *In re Bone Screws Products Litigation*, 1995 WL 428683, *2 (E.D. Pa. 1995) ("joinder based on the belief that the same occurrence or transaction is satisfied by the fact that claimants have the same or similar device of a defendant manufacturer implanted in or about their spine is ... not a proper joinder.").

¶29.    Plaintiffs assert that judicial economy may be achieved by, at a minimum, allowing all parties to continue at this stage of the proceedings, and allowing the trial court to determine if multiple trials are required.  As stated in *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 354 (2d Cir. 1993), "the discretion to consolidate is not unfettered.  Considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial.... The benefits of efficiency can never be purchased at the cost of fairness." *Id.*

16

¶30.     Janssen contends that in a joint trial, otherwise inadmissible evidence of "subsequent remedial measures" would be admissible and that revised and expanded warning labels are a clear subsequent remedial measure.  We agree.  More accurate and fair results would be obtained if each plaintiff's case included only the warning label in effect at the time of the alleged injury, in order to determine the true nature of the manufacturers' conduct.  In a joint trial, the multiple revised warning labels would be extremely prejudicial when admitted against the defendant.

¶31.     Janssen argues that the mere manufacture of a drug cannot, as a matter of law, establish liability; under Mississippi law, in strict liability or negligence theories, liability turns on the adequacy of the accompanying warnings.  *Bennett v. Madakasira*, 821 So.2d 794, 804 (Miss. 2002) (citing *Swayze v. McNeil Labs., Inc.*, 807 F.2d 464, 467 (5th Cir. 1987)).  Additionally, even if the warning is inadequate, the burden is on the plaintiffs to show than an adequate warning would have altered the doctor's conduct who prescribed the medication.  *Wyeth Labs., Inc. v. Fortenberry*, 530 So.2d 688, 691 (Miss. 1988).  *See also **Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806, 811-12 (5th Cir. 1992).  Each plaintiff has a unique medical history, and during the time frame involved in the 56 claims, there were five different warning inserts.  That each physician made the decision to prescribe Propulsid based on individual information supports our holding that the transaction or occurrence for each underlying claim is each doctor's prescribing Propulsid to each plaintiff.  The present case requires there to be a judgment of liability with respect to each of the 45 defendants, and this determination of

17

liability will turn on, among other things, each plaintiff's own distinct medical history, injuries and damages, the adequacy of the warning labels in place at the time the drug was ingested, as well as an answer to the question of whether each prescribing physician would have prescribed Propulsid even with an adequate warning. No jury can be expected to reach a fair result under these circumstances, especially concerning an immature tort in which the few cases actually tried suggest that medical evidence about individual causation will be an essential aspect of the case.

¶32.   *Cain v. Armstrong World Industries*, 785 F. Supp. 1448, 1457 (S.D. Ala. 1992), supports this conclusion. In *Cain*, an asbestos case, the federal district court ordered new and separate trials, after the jury returned damage awards which were unsupported by the evidence. The judge indicated that the plaintiffs had overwhelmed the jury with evidence that would not have been admissible in separate trials. "As the evidence unfolded in this case, it became more and more obvious to this court that a process had been unleashed that left the jury the impossible task of being able to carefully sort out and distinguish the facts and law of thirteen plaintiffs' cases that varied greatly in so many critical aspects." *Id.* Mass joinder of these claims will make it impossible for the jury to limit the evidence to the appropriate plaintiff and doctor relationship. Some cases will be much stronger than others, but the potential is that the collective evidence will be applied to all defendants, thereby prejudicing each physician. *See Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 343-45 (4th Cir. 1998)

18

(improper aggregation allows plaintiffs to litigate on behalf of a composite "perfect plaintiff" combining the strongest aspects of unrelated claims).

## CONCLUSION

¶33. We hold that joinder of these claims was improper and that the trial court abused its discretion in denying the motion to sever and transfer. The facts of this case distinguish it from *Travis*, the case relied on by the trial court to deny the motion to sever. In *Travis*, there was a single defendant, and the issues revolved around the negligence of this defendant. Also in *Travis*, this Court found that all claims arose out of an occurrence common to all plaintiffs: namely, the defendant's policy of not warning or protecting its workers from hazards of asbestos exposure and defendant's breaching its duty to provide a reasonably safe work place.

¶34. In the present case, each plaintiff/doctor combination has its own set of facts and evidence surrounding the prescribing of Propulsid, the transaction or occurrence which is the basis for each claim. Thus, there is no single transaction or occurrence or series of transactions or occurrences connecting all 56 plaintiffs and 42 physician defendants. We reverse the trial court's order, and we remand the case for severance of all claims against defendants who have no connection with Armond. This would include all physicians who have not prescribed Propulsid to Armond. We also instruct the trial court to transfer the severed cases to those jurisdictions in which each plaintiff could have brought his or her claims without reliance on another of the improperly joined plaintiffs.

¶35. **REVERSED AND REMANDED.**

19

**PITTMAN, C.J., SMITH, P.J., CARLSON AND DICKINSON, JJ., CONCUR. EASLEY, J., CONCURS IN PART. GRAVES, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY EASLEY, J. WALLER, P.J., AND DIAZ, J., NOT PARTICIPATING.**

**GRAVES, JUSTICE, SPECIALLY CONCURRING:**

¶36.    I concur with the result as reached by the majority. I write separately to address the history of permissive joinder in Mississippi and why it has evolved as it has. Mississippi should adopt a class action rule that would provide due process to both defendants and plaintiffs.

**I. Class actions in Mississippi**

¶37.    Mississippi is the only state that permits no class actions of any kind, whether through common or statutory law. Richard T. Phillips, *Class Action & Joinder in Mississippi*, 71 Miss. L.J. 447, 453 (2001).[8] It has been theorized that Mississippi coped with the absence of a codified Rule 23 in three ways: "(1) the mass aggregation of individual claims under Rules 20 and 42 of the Rules of Civil Procedure, (2) the 'ancient equitable remedy' of the 'equitable class action' and (3) where all else fails, the prosecution of select individual cases for punitive damages." *Id*. at 455.

---

[8] Since the publication of Mr. Phillips' article New Hampshire has adopted a state rule of civil procedure governing class actions. *See* N.H. R. Super. Ct. R. 27-A. While Virginia does not have a state rule governing class actions, it allows class actions in equity "when a single right is asserted on one side, which affects all the parties on the other side in the same way, or a single wrong is complained of, which falls on them all simultaneously and together." ***Bosher v. Richmond & H.L. Co***., 16 S.E. 360, 361 (Va. 1892); *see also* 4 *Newberg on Class Actions* § 13:1 (4th ed. 2003).

¶38.	The majority is correct when it writes that the text of Federal Rule 20 and our state Rule 20 are almost exactly the same, for we patterned our Mississippi Rules of Civil Procedure after the Federal Rules. *See Owens v. Thomae*, 759 So.2d 1117, 1121 n.2 (Miss. 1999). Yet the federal Rule 20 never underwent the evolution that our rule emerged from, for there was always a federal class action rule to handle large groups of parties with common interests. The application of Rule 20 expanded over the past two decades to fill the void from the lack of a class action rule. Our Rule 20 has long been used in lieu of a class action rule.

¶39.	In 1833, just a little over a decade after Mississippi was admitted to the Union, "the first provision for group litigation in federal courts was set forth as Equity Rule 48." Deborah Hensler, Nicholas Pace, Bonita Dombey-Moore, Beth Giddens, Jennifer Gross, & Erik Moller, *Class Action Dilemmas* 10 (2000). The Federal Rules of Civil Procedure were first adopted a little over a century later, in 1938, and included the ancestor of the current class action rule. *Id.* at 11.

¶40.	Traditionally, Mississippi allowed class actions in equity. *See Marx v. Broom*, 632 So. 2d 1315, 1322 (Miss. 1994) (noting that "[p]rior to the enactment of the Rules of Civil Procedure, this Court recognized the possibility of class action suits as a matter of general equity jurisdiction in chancery court under limited circumstances"); Virgil Griffith, *Mississippi Chancery Practice*, § 130 (2000); Jeffrey Jackson, Mary Miller, Ronald Morton, & Justin Matheny, *Class Actions*, 2 Miss. Prac. Enc. § 13:59 (2001);[9] T. Jackson Lyons,

---

[9] In its most recent update the Mississippi Encyclopedia recognizes that ***Booth*** abrogates class actions.

*Derivative Actions*, 22 Miss. Prac. Enc. § 22:222 (2001); Phillips, at 455; Geoffrey Miller & Lori Singer, *Nonpecuniary Class Action Settlements*, 60 Law & Contemp. Probs. 97, 146 (1997); Kurt A. Schwarz, Note, *Due Process and Equitable Relief in State Multistate Class Actions after* Phillips Petroleum Co. v. Shutts, 68 Tex. L. Rev. 415, 450 n.84 (1989). These suits were abolished when we adopted our own rules of civil procedure in 1982. ***Am. Bankers Ins. Co. of Fl. v. Booth***, 830 So. 2d 1205, 1211 (Miss. 2002).

¶41. It is no wonder that a type of "super-joinder" arose under our Rule 20. Plaintiffs in our state courts were forbidden from invoking any sort of class action, and so joinder slowly grew to encompass the massive and unwieldy actions the majority rightfully struggles with today. We have always wrestled with defining the scope of permissive joinder. From the very moment we adopted the rule we displayed ambivalence, announcing that "[j]oinder of parties under Rule 20(a) is not unlimited," while only a few sentences later stating that "[t]he general philosophy of the joinder provisions of these rules is to allow unlimited joinder . . . ." Miss. R. Civ. P. 20 cmt.

¶42. For too long our Rule 20 has been stretched and pulled in various directions, and forced to accomplish tasks it was never designed to do. The majority today does not ameliorate that unfortunate situation. It is imperative that we modernize our rules of civil procedure by adopting a class action provision. This is completely in accordance with our recent desire to modernize, as shown by the amendment of Miss. R. Evid. 702 (adhering to the ***Daubert***

standard over *Frye*) and the adoption of Miss. R. Civ. P. 35 (allowing the physical and mental examination of parties to a case).

¶43.    There are multiple ways we could approach this problem, but we do not solve it when we refuse to address it. The majority opinion does not cure the ills of Rule 20, but only starts them on a new course of treatment. In this electronic millennium we must face the fact that multiple plaintiffs might have an identical cause of action against a defendant. We must deal with that potentiality in a just manner, coupled with due process for both defendants and plaintiffs. Despite the assurances of the majority that this opinion does not disturb the settled law of our state, trial judges and attorneys have little guidance to determine when defendants should be severed for lack of relation.

## II.  The Risk of Inconsistent Judgments

¶44.    The majority opinion allows for multiple inconsistent judgments. This is a risk that no judicial system should take. While there may be fifty-six plaintiffs in the case *sub judice*, with a concurrent number of medical histories, facts, and eccentricities, there is one massive fact common to all: the drug Propulsid. The hazard we create today is that a defendant may not rely upon the courts of Mississippi for fear of inconsistent judgments.

¶45.    This decision helps no one, defendant or plaintiff, and could profoundly impact our business communities and the economies dependent on them for survival. A defendant with even the most basically available product may suddenly find itself defending suits in every one of our eighty-two counties. Today we court this dilemma, which takes shape in the form of a "race to the courthouse," at our peril. We risk a flood of litigation the likes of which even our

23

state—famous, or infamous, for litigation—has never seen. For what happens in Lee County will have absolutely no bearing on what happens in Harrison County, or Issaquena County, or Lauderdale County. The doctrine of *res judicata* will be worth nothing. ¶46. The true danger of the majority's opinion is the risk of unsettled law—that judges, juries, attorneys, parties, students, and citizens will not understand the procedures and policies of our court system. This undermines the very reason we adopted our Rules over twenty years ago—to eradicate the old legal world that operated mysteriously, half in Latin, completely out of reach of most Mississippians. Parties suffer without settled procedure to guide them, and refusing to have class actions when every other state employs them is an imprudent adherence to an archaic doctrine that helps no one.

¶47. Today's decision does not deter frivolous litigation or the abuse of joinder, but actually encourages multiple litigation, for it might be reasoned that thirty wins in thirty counties, with ten losses in ten counties, is better than one huge loss in one county. Instead of a company defending itself in one action against fifty-six claims, aggregated in one county, there could be fifty-six claims in fifty-six counties. This does not promote judicial economy.

¶48. Nonetheless, despite the severe misgivings I have about today's decision, it reaches the correct result regarding the physician defendants. The sole reason I agree with the majority's ultimate decision to sever is the presence of the physician defendants in the instant case. The physicians were dragged across the state to sit in a foreign jurisdiction, in towns they had perhaps never visited before—and which their patients may have never visited before, either. It simply seems that a better path could be taken; a path that alleviates the great and unnecessary

24

stress we place on Rule 20. The correct path creates a class action procedure that will allow courts to fairly administer claims with numerous parties, protects the interests of both defendants and plaintiffs, and avoids inconsistent decisions.

**EASLEY, J., JOINS THIS OPINION.**